UNITED STATES, Appellant

v.

EARL M. BUCKMILLER, Private, U. S. Army, Appellee

1 USCMA 504, 4 CMR 96

No. 492

Decided July 31, 1952

Lt. Col. Paul J. Leahy, USA, and 1st. Lt. Richard L. Brown, USA, for Appellant.

Lt. Col. George E. Mickel, USA, and 1st Lt. Bernard Landman, Jr., USA, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused in this case was tried and convicted by special court-martial[1] at Fort George G. Meade, Maryland, on November 20, 1951, on charges alleging failure to obey the lawful order of a noncommissioned officer, and absence without leave. The court sentenced the accused to a bad-conduct discharge, forfeiture of pay of $25.00 per month for six months and confinement at hard labor for six months. The convening authority approved but the Army board of review, in a decision to be hereinafter discussed, reduced the confinement at hard labor to three months and the

[1] Sp CM 4537.

forfeiture of pay to $25.00 per month for a like period.

It appears from the record that on September 20, 1951, Sergeant First Class Jarrett, Acting First Sergeant of the Rear Detachment of the 70th Gun Battalion, ordered accused to report to the Battalion Ration Breakdown Section for duty. Accused replied that he did not have to work, or could not work, because of a boil under his arm. Although accused was advised that he would be given light work which would not interfere with his boil, accused against stated that he did not have to work, turned, and walked away. Accused did not report for ration breakdown detail at any time on the day in question.

The case was certified to us by The Judge Advocate General of the Army, and upon motion was consolidated for hearing with the case of United States v. James F. McNeely (No. 494), 1 USCMA 510, 4 CMR 102, decided this date, upon the following issue:

"Does the sentence adjudged by the court-martial exceed the maximum punishment prescribed in Manual for Courts-Martial, United States, 1951, for the offenses of which the court-martial convicted the accused?"

The accused was charged with failing to obey a lawful order under Article 92 of the Uniform Code of Military Justice, 50 USC § 686. The maximum punishment for this offense is a bad-conduct discharge, total forfeiture of pay and confinement at hard labor for six months. Paragraph 127c, Manual for Courts-Martial, United States, 1951, page 221. Such punishment is further limited, however, by Footnote 5, on that same page, which states that "The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table." Article 86(1) of the Code, 50 USC § 680, provides that any member of the armed forces who, without proper authority, fails to go to his appointed place of duty at the time prescribed shall be punished

as a court-martial may direct. Paragraph 127c, supra, page 220, provides that the maximum punishment for "Failing to go to, or going from, the appointed place of duty" is confinement at hard labor for one month and forfeiture of two-thirds pay for a like period. The board of review took the position that the offense here charged as a failure to obey an order under Article 92, supra, constituted a violation of Article 86(1), supra, the maximum punishment for which is "specifically listed elsewhere in" the Table of Maximum Punishment, and that accordingly the maximum punishment is limited by Footnote 5 to confinement at hard labor for one month and forfeiture of two-thirds pay for a like period.

The problem before us is whether the restrictions of Footnote 5 apply to this case. If they do, then the board of review's action was correct. In "Legal and Legislative Basis," Manual for Courts-Martial, United States, 1951, at page 196, the authors have this to say concerning the footnote in question:

". . . The footnote, which applies to the first two entries under Article 92, is designed to eliminate the confusion which could result from a contention that a violation of other specifically listed offenses, for example, disobedience of a superior officer under Article 90, or willful disobedience of the lawful order of a warrant officer or noncommissioned or petty officer under Article 91, or wrongfully appearing in civilian clothing under Article 134, should be punished as a violation of Article 92."

The language of the footnote, even as amplified in the discussion of the drafters of the Manual, is exceedingly ambiguous. A technical and entirely litteral interpretation of the footnote leads to a conclusion that in no case can an accused be convicted of knowingly failing to obey a lawful order under Article 92, supra, if the circumstances of the offense also involve, in any way, "failing to go to . . . the appointed place of duty" under Article 86. This, we think, cannot have been the result in-

**505**

tended. The footnote becomes much more sensible if interpreted to require a comparison of the gravamen of the offense set out in the specification with the charge it is laid under and other articles under which it might have been laid.

Here, the specification alleged that the accused, having been specifically ordered to perform a certain duty, did fail to obey the order. The board of review held that this constituted a violation of Article 86(1), supra—the Code counterpart of the old "failure to repair." We have no doubt that the facts alleged in the specification would support a charge under Article 86(1). That, however, is not the test. The gravamen of the offense as spelled out in the specification is the disrespect for authority as evidenced by the disobedience of the direct order of a superior. This is obviously an offense of a more serious character than that condemned by Article 86(1). The latter article contemplates, generally, a failure to report for routine duties as prescribed by routine orders. An example may be found in United States v. Wiley, SpCM 3746, decided October 2, 1951, where the footnote under consideration was, we think, properly applied. There, the accused had been informed that his sentence by summary court-martial, including hard labor for 20 days, had been approved, and he was ordered by a Captain to report for fulfillment of the hard labor to the First Sergeant, "who would direct him to the time and place every day to report and the extra duty." The First Sergeant instructed the accused to report to the Charge of Quarters in the orderly room at 1:00 p. m. on Saturday and Sunday and at 6:00 p. m. on week days to perform two hours extra duty. The accused complied with this order until June 30, 1951, on which day he failed to report to the Charge of Quarters for extra duty. Accused was then charged with failing to obey a lawful order of Captain McCarty. The board of review applied Footnote 5 and reduced the sentence to that authorized for a violation of Article 86(1), supra.

Another case which may be cited as a proper application of the footnote to the punishment provisions for Article 92, supra, is United States v. Carpenter, 11 BR–JC 369. There, the accused was charged with wrongfully and unlawfully wearing civilian clothing in violation of Paragraph 3, Special Order No. 214, HQS 862nd Engineer Aviation Battalion, dated December 11, 1950, and paragraph 8d, Circular 185, U. S. Army Europe, dated August 4, 1950. The board of review stated that the maximum punishment for appearing in civilian clothing without authority is forfeiture of pay for ten days, citing Manual for Courts-Martial, U. S. Army, 1949, paragraph 117c, and held that a greater punishment could not be given for that offense merely by laying it as a violation of Article 92, supra.

Where a member of the Armed Forces is given a direct, personal order by a superior to report to a particular place, and this order is disobeyed, Article 92, supra, is violated. This offense is a serious one, and properly allows a more severe sentence than the avoidance of routine duty proscribed by Article 86(1), supra. The gravamen of the offense disclosed by the acts alleged in the specification here was a knowing failure to obey the direct, personal order of a superior. As such, the accused could legally have been sentenced for a violation of Article 92, supra, despite the fact that the acts alleged may also be interpreted to constitute a violation of Article 86(1), supra.

The question certified is answered in the negative. The case is remanded to The Judge Advocate General of the Army for further action consistent with this opinion.

Judge BROSMAN concurs.

GEORGE W. LATIMER, Judge (concurring in results):

I concur in the results.

While I realize that we should, only under most unusual circumstances, restrict the provisions of the Manual as narrowly as I do, I believe this to be one of those unusual situations. When the literal import of words leads to absurd results then it is a fair assump-

tion they were employed in some other sense.

In this instance if the terms of the footnote are interpreted literally any offense listed in the Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, involving a failure to obey an order, must be punished as provided for under the specifically listed offense. If, however, there is no punishment listed for that substantive offense, then the crime may be punished as provided for under Article 92. The difficulty with this interpretation is that so few substantive offenses, which involve failure to obey, are listed in the schedule, while so many less important delicts can be made the basis of a charge of failure to obey, that absurd and undesirable results are encountered.

By way of illustration, in the particular instance the accused was ordered to report to a ration breakdown point for duty. He failed to obey the order and unquestionably he violated Article 86(1), supra, by failing to go to his appointed place of duty at the time prescribed. Literally applying the footnote would limit his punishment to one month and forfeiture of two-thirds pay for not to exceed that period. Again using the same literal application, if we compare punishment for that offense to one where an enlisted driver is charged with failing to obey the order of a motor sergeant to turn off the motor, we find that conviction of the latter offense would permit imposing a sentence of bad-conduct discharge, six months' confinement and total forfeitures of all pay and allowances. I would, therefore, disregard that construction because I find no rational basis for such disparity in sentences.

The Court has attempted to escape the undesirable consequences found in a literal construction by interpreting the act to bring about what at first glance might appear to be a more desirable result. However, if the services attempted to apply the rule set forth in the Court's opinion, which I believe to be impracticable, just as many undesirable consequences would follow. As I understand the rule pronounced in the majority opinion, it is that if the gravamen of the offense alleged and established is disobedience of a direct order of a superior, then the footnote does not apply. In attempting to apply this, I see absurdities in permitting a court to sentence one accused to six months, bad-conduct discharge and forfeiture of all pay and allowances for the failure to obey a direct oral order given by a noncommissioned officer and yet be limited to sentencing another accused to one month confinement with a forfeiture of two-thirds of a month's pay if he fails to obey a written order signed by an officer and personally delivered to him. Surely there is disrespect for authority in both instances and the disparity in the sentences seems illegal and unjust.

Examples could be multiplied, but it would be the work of supererogation. Regardless of how the footnote is applied, unless it is limited to cases which are prosecuted under Article 92, supra, to increase the punishment, no sensible meaning can be given to it. Accordingly, I would adopt the rule found in Paragraph 4508, Sutherland Statutory Construction, 3rd ed. The author there explained the principle in the following language:

"It is apparent from the nature of the interpretative process that cases will arise where none of the rules of interpretation will disclose with precision the legislative intent which motivated the legislative action. When this occurs courts frequently have refused to apply the statute on the ground that its terms were too indefinite and uncertain. In many instances the courts have gone farther and asserted the statute was therefore void for uncertainty. . . .

. . . . . . . .

"In negligence cases where the court is required to determine the effect of due care it will instruct the jury or decide itself, as the case may be, the conduct expected of a reasonable man under the circumstances and by that standard judge the defendant's act. By analogy, in those cases where all efforts to determine

**507**

the actual legislative intent have failed, a court might reasonably apply a 'reasonable legislature' standard. That is, it might consider the evils which existed and which the legislature was endeavoring to correct and on the basis of that and the language available from the statute arrive at a judgment as to what a legislature probably would have intended. At the risk of being wrong the court will at least be able to decide the merits of the case and if its decision was wrong and did not reflect the legislative intent, the legislature itself could correct the error at its next session."

I am reasonably certain that the codifiers of the Manual intended to use the footnote for the purpose of preventing convening authorities from increasing the punishment for commission of relatively minor offenses by the simple expedient of charging them as failure to obey an order. This is the evil that existed, and is the one, I believe, the codifiers attempted to correct. For this reason I would not hold the footnote void, as it has a useful purpose if limited in scope. I would, therefore, adopt a construction which carries out what I believe to be the intent of the codifiers and only apply the footnote in those cases where there was a fair probability that the accused was guilty of a listed offense, but was charged with failure to obey an order to permit imposition of a greater sentence. This case does not appear to fall in that category, and so I would answer the question in the negative.