UNITED STATES, Appellant

v.

OSVALDO J. YUNQUE-BURGOS, Private E–2,
U. S. Army, Appellee

3 USCMA 498, 13 CMR 54

No. 2848

Decided December 11, 1953

<br/>

Lt Col William R. Ward, U. S. Army, and Major Irvin M. Kent, U. S.
Army, and 1st Lt Paul D. Heyman, U. S. Army, for Appellant.

Lt Col James C. Hamilton, U. S. Army, and Capt William C. Irby, Jr.,
U. S. Army, for Appellee.

ROBERT E. QUINN, Chief Judge:

The facts in this case are simple. After an authorized absence of ten days from his organization in Germany, the accused was restricted to his unit area. This upset him and he told a fellow-soldier he intended to leave the organization permanently. He then broke his restriction by going to a nearby city where he met a girl with whom he had been keeping company. After discussing his fear of apprehension by military police, the couple decided to set out for a community beyond the reach of military authorities. He changed into civilian clothes and they began the journey finally arriving at the town of Obersuhl, located in the border zone dividing east and west Germany. Observed and questioned by an alert customs guard, the accused admitted his identity as an American soldier. He was then taken into custody by military authority. The total length of his absence on this occasion was two days.

The appearance of the accused in civilian clothing contravened the provisions of the Uniform Regulations promulgated by Headquarters European Command. These Regulations prohibit the wearing of civilian clothing in Germany without specific authority of the Headquarters, except under certain circumstances not here material.

Upon these facts, the accused was charged with absence without leave,[1] desertion predicated upon his second absence,[2] violation of a lawful general order by appearing in civilian clothing without authority,[3] and breach of restriction.[4]

He was convicted of all charges and specifications, except that of desertion. As to this, the court, by exceptions and substitutions, convicted him of absence without leave for the period specified, namely, two days, in violation of Article 86 of the Code. Confinement at hard labor for six months and partial forfei-

ture of pay for a like period were imposed as the sentence.

After approval by the convening authority, The Judge Advocate General of the Army, pursuant to the discretionary authority granted by Article 69 of the Code, supra, 50 USC § 656, referred the case to a board of review. The board affirmed the findings, but, upon the theory that the offense of appearing in civilian clothes was included in that of appearing in other than "prescribed uniform," it held applicable the provisions of the Manual for Courts-Martial, United States, 1951, paragraph 127c, Footnote 5. The board concluded that the maximum punishment for appearing in civilian clothes without authority was confinement and partial forfeitures for one month. Accordingly, it reduced the sentence to confinement at hard labor for three months and six days, and partial forfeiture of pay for a like period.

The Judge Advocate General certified the following question for our determination:

"Is the maximum punishment for the offense of wearing civilian clothing in violation of a general regulation limited by footnote 5, paragraph 127c, Manual for Courts-Martial, 1951, page 221?"

It should be clear from the outset that the specification properly alleges a violation of a lawful general order. See United States v. Simpson, 2 USCMA 493, 9 CMR 123. The problem presented relates solely to the limit of punishment for the offense under the circumstances of this case. The Code provides simply that violators of Article 92 "shall be punished as a court-martial may direct." Obviously this does not supply the answer, for this phrase is the standard measure of punishment fixed by Congress for non-capital offenses. Through the Table of Maximum Punishments, found in paragraph 127c of

---

[1] Charge I, Article 86, Uniform Code of Military Justice, 50 USC § 680.

[2] Charge II, Article 85, Uniform Code, supra, 50 USC § 679.

[3] Charge III, Article 92, Uniform Code, supra, 50 USC § 686.

[4] Charge IV, Article 134, Uniform Code, supra, 50 USC § 728.

the Manual, supra, the President has prescribed the maximum limits of the punishment which a court-martial can impose for any listed offense, as well as for "any lesser included offense if the latter is not listed, and for any closely related to either if not listed." The maximum punishment provided therein for failure to obey a lawful general order is a dishonorable discharge and confinement at hard labor for two years. This limitation is not absolute, however, for a further limitation is established by Footnote 5 to this paragraph, which states:

"The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

The sole purpose of this provision is to prevent the imposition of a more severe punishment for an offense, which, although alleged as a failure to obey, is, in fact, another offense specifically provided for in the Table of Maximum Punishments. Applicability of Footnote 5 is determined in an appropriate case by comparison of the gravamen of the offense set out in the specification with the charge under which it is laid and other articles under which it might have been laid. United States v. Buckmiller, 1 USCMA 504, 506, 4 CMR 96, 98; United States v. Larney, 2 USCMA 563, 10 CMR 61.

Although we were concerned in the above cited cases with failures to obey direct, personal orders in violation of Article 92(2), Footnote 5 applies as well to violations of general orders or regulations under the first subdivision of the Article. The test therein set up is equally applicable to the latter offense.

In the instant case we are concerned with a violation of an order prohibiting the wearing of civilian clothes in Germany. The Table of Maximum Punishments, supra, contains no specific provision relating to the offense of appearing in civilian clothes without authority, but it does provide a punishment for appearing in other than the prescribed uniform. The punishment provided for the latter offense applies to the former, only if the former is a lesser included offense thereof, or is closely related thereto. Paragraph 127c, Manual for Courts-Martial, supra, page 214.

We are satisfied that under the circumstances of this case, wearing civilian clothes is neither less than, nor closely related to, appearing in improper uniform. The orders prohibiting the wearing of civilian clothes were effective only in Germany, the occupied country of a former enemy. Our forces in that country are in proximity not only to our former enemies but to potential future enemies. The success or failure of our military operations may well depend upon the orders of the Commanding Officer. Among the precautions he is expected to take are those designed to establish and maintain control over the occupation forces. Lack of control over these forces might not only embarrass this country, but could very well spell the difference between success and failure of its occupation. It is evident that the general orders published in this instance were directly related to the control of the occupation forces. Only the uniform distinguishes the soldier from the citizen in the occupied territory. Without uniform, a member of the armed forces is free to travel unnoticed. A period of unauthorized absence from a unit in which his services are absolutely vital may be unduly prolonged if he is free to conceal his identity by this simple expedient. Moreover, feeling secure in an assumed identity, he may feel free to commit acts which, if done by a soldier, would lead to his immediate apprehension by military authorities. Of great importance, as well, is the facility with which he can, so disguised, pass from the western to the eastern zones of occupation. Such a practice invariably leads to accusations of spying, wholesale desertions, and a variety of other allegations which needlessly multiply the vexations of our position there. Under the circumstances, there is no doubt that the wearing of civilian clothes is

far more serious than appearing in fatigues in an area requiring dress uniform, or wearing a leather belt when a web-belt is the order of the day.

Failure to comply with a directive of vital importance in a troubled area is a serious offense and properly permits a more severe sentence than is provided for mere appearance in other than the prescribed uniform. Consequently, the provisions of Footnote 5 do not apply.

Accordingly, the question certified is answered in the negative. The decision of the board of review is reversed and the case is remanded to The Judge Advocate General of the Army for further action consistent with the views expressed herein.

BROSMAN, Judge (concurring):

I concur. My outright concurrence in this case is based on an understanding that the principal opinion does not depart from the ratio of this Court's decision in United States v. Buckmiller, cited by the majority. I am sure that it does not do so. Although the spokesman for the Court refers to the purpose of Footnote 5 as being "to prevent the imposition of a more severe punishment" for an offense, he indicates immediately thereafter that he conceives "the gravamen of the offense" to be the touchstone in the problem. This is what the Court held in Buckmiller, and I am sure it is what we are holding here. The question in this sort of case, as I see it, is what violation is, in fact, alleged. Cf. United States v. Deller, 3 USCMA 409, 12 CMR 165. Is the accused here charged merely with being in improper uniform, or is it alleged that he wore civilian clothes, in violation of a general order? I think it is the latter—and so does the Chief Judge.

I am not too greatly concerned that in the Buckmiller case we referred in passing to United States v. Carpenter, 11 BR–JC 369—a case similar to the present one—as reflecting a proper application of Footnote 5, whereas here we appear to reach a contrary conclusion. The Carpenter case was decided in 1950. Perhaps the gravamen of an offense may change with circumstances. Perhaps the two cases may be distinguished. Or perhaps the majority in Buckmiller simply chose in dicta a bad illustration. However, I am sure that, in view of the use we made of the Carpenter case in Buckmiller, the board of review is to be criticized in no way for its decision here.

LATIMER, Judge (concurring in the result):

I concur in the result.

My reasons for so doing are substantially set forth in my concurring opinion in United States v. Buckmiller, 1 USCMA 504, 4 CMR 96.