UNITED STATES, Appellee

v.

ORLO R. LOOS, Private E–1, U. S. Army, Appellant

4 USCMA 478, 16 CMR 52

No. 4252

Decided July 2, 1954

Lᴛ Cᴏʟ George M. Thorpe, U. S. Army, Cᴀᴘᴛ William C. Irby, Jr., U. S. Army, and 1ꜱᴛ Lᴛ Joseph B. Axelman, U. S. Army, for Appellant.

Lᴛ Cᴏʟ William R. Ward, U. S. Army, 1ꜱᴛ Lᴛ Ezra B. Jones, Jr., U. S. Army, and 1ꜱᴛ Lᴛ Richard F. Ralph, U. S. Army, for Appellee.

## Opinion of the Court

Pᴀᴜʟ W. Bʀᴏꜱᴍᴀɴ, Judge:

Following trial by general court-martial—and despite his contrary plea—the accused, Loos, was found guilty of: (1) two offenses of failure to obey a lawful order of Captain Sylvester A. Nowak, in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686; (2) absence without leave, in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680; and (3) breach of restriction, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to receive a bad-conduct discharge, as well as to total forfeitures and confinement at hard labor for one year. Intermediate reviewing authorities having affirmed, we have granted accused's petition for review to determine whether the limitations set forth in Footnote 5, paragraph 127c, page 221, of the present Manual for Courts-Martial apply to the crimes of failure to obey mentioned above. Only the evidence germane to the single issue presented on appeal will be recited.

II

On August 5, 1953, the accused was informed by Captain Nowak, his company commander, that his sentence by summary court-martial—including thirty days of hard labor without confinement—had been approved. Pursuant to that sentence, therefore, Captain Nowak instructed that he cut grass daily during certain specified periods, and informed him that the first sergeant would direct his activities during the remainder of each day.

The accused was also instructed to report to the charge of quarters daily for the purpose of signing in and securing necessary mowing equipment. At the completion of each day's stint, the accused was required to report once more to the charge of quarters and to sign out. The former complied with these orders until August 8, 1953. On

that date he reported for his hard labor detail, but was found to have left the scene of these endeavors prior to the appointed time. The following day he did not appear at all—and thus neither reported nor worked.

## III

In the first instance, we have a situation where the specification is in terms adequate to allege properly the offense of failure to obey a lawful order. See United States v. Simpson, 2 USCMA 493, 9 CMR 123. For such an offense an accused person is subject to a maximum sentence of bad-conduct discharge, total forfeitures, and confinement at hard labor for six months. Manual for Courts-Martial, United States, 1951, Table of Maximum Punishments, paragraph 127c, page 221, supra. However—and whether wisely or no—these provisions are not made applicable in every instance. Footnote 5 to the mentioned paragraph provides as follows:

"The punishment for this offense [failure to obey] does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

Although designed—apparently—to eliminate the confusion which might result from a conceivable contention that the commission of other specifically proscribed and relatively minor offenses should be punished as more serious violations of Article 92, the footnote has tended to become a source of the very condition it sought to cure. We believe we are on reasonably firm ground in suggesting that Footnote 5 might well be redrafted with profit.

On several previous occasions we have been called on to consider this provision of the Manual. In each instance we have essayed to apply the policy formulated by the footnote, and have attempted to avoid both too literal and too narrow an application of the language set out above. United States v. Buckmiller, 1 USCMA 504, 4 CMR 96; United States v. McNeely, 1 USCMA 510, 4 CMR 102; United States v. Larney, 2 USCMA 563, 10 CMR 61;

United States v. Yunque-Burgos, 3 US CMA 498, 13 CMR 54. In the light of our previous holdings, the footnote must be interpreted to require "a comparison of the gravamen of the offense set out in the specification with the charge it is laid under and other articles under which it might have been laid." United States v. Buckmiller, supra, page 506. In other words—and under our earlier decisions—the applicability of the provision is limited strictly to those situations which involve the failure to obey a lawful order and at the same time other misconduct specifically enumerated in the Manual's Table of Maximum Punishments—and in which the "other misconduct" is deemed to constitute the gravamen of the offense committed.

In the present situation—and in essence—the accused did no more than go from (in one instance) and fail to go to (in another) an appointed place of duty. He was instructed to report to the charge of quarters, to sign in and out, and to cut grass. After several days, he failed to conform to this direction. This sort of misconduct is punished normally under Article 86(1) of the Code, and is mentioned specifically in the Table of Maximum Punishments. In general, Article 86(1) contemplates a mere failure to report for routine duties as prescribed by routine orders—and each transgression is punishable by no more than confinement at hard labor for one month and a forfeiture of two-thirds pay for a like period. Unless, therefore, there are factors operative here which characterize the conduct of the accused as amounting to something more than a failure to perform routine duties in accordance with a routine directive, Footnote 5 is applicable to this case.

To our minds, the evidence as reflected in the record of trial here fails to disclose that the accused was given a direct, personal order which he knowingly failed to obey. It is undeniable that a superior officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck—and thus remove the failure to perform it from within the

480

ambit of Article 86(1), supra. Here, however, we find no evidence indicating that Captain Nowak sought to do this. It is true that he *may* have sought to insure the performance by the accused of hard labor by adding his own voice to the obligation imposed by the court-martial. Yet the weakness of the Government's case is that this possibility is rendered in no way certain by the record.

### IV

It is urged on us that the very fact that Captain Nowak personally informed the accused of his obligation to perform hard labor is persuasive that the latter was given to understand that a failure to accomplish the assigned task for the duration of the sentence would be considered a delict more serious than a mere failure to perform a routine duty. But let us reflect on the mechanics involved in this situation. The Manual, supra, provides as follows on page 213 of its paragraph 126*k*: .

". . . Hard labor without confinement, adjudged as punishment by court-martial, shall be performed in addition to other duties which fall to the enlisted person; and no enlisted person shall be excused or relieved from any military duty for the purpose of performing such hard labor. A sentence imposing hard labor without confinement shall be considered satisfied when the enlisted person shall have performed hard labor during available time in addition to performing his military duties. *Normally, the immediate commanding officer of the accused will designate the amount and character of the labor to be performed.* The daily performance of the designated hard labor before or after routine duties are completed satisfies the sentence whether the particular daily assignment requires one, two, or more hours." [Emphasis supplied.]

In the light of this provision of the Manual, we are driven to conclude that nothing above or beyond the formalized designation of the particular variety of hard labor to be performed by the accused was accomplished by Captain Nowak. It is perfectly true that in many instances "the amount and character of the labor to be performed" in such a case as this will be designated by the unit commander *through* his first sergeant. However, it does not at all follow that, because the Captain chose here to pursue a different course, he sought to elevate the duty in kind. Indeed, we do not at all know why the route he followed was selected. Thus we have here a routine duty fixed for the accused. His failure to perform that duty—after several days of compliance—amounted to no more than a routine failure. Hence, the gravamen of the crime shown, in our view, amounts to no more than a violation of Article 86(1), supra. It follows that the provisions of Footnote 5 are applicable, and that the sentence authorized by the law officer as to this offense exceeds maximum authorized limits. See United States v. Wiley, 1 CMR 420.

Appellate Government counsel seek to avoid the application of the rule of the Wiley case, supra, to the present one by means of an argument which is at once ingenious and erroneous. We are told that here the primary duty brought into being by Captain Nowak's order was one to cut grass, whereas in Wiley the principal obligation created was one to report to the orderly room, where the accused would receive extra duty instructions. In the present case, it is asserted, the physical placement or location of the accused was not directed by the gist of the order. Thus it is concluded that the accused, Loos, did not fail to *repair;* instead he failed to *obey.*

We cannot accept this distinction between the two cases. We are without doubt that it was contemplated that the accused should repair to *some* place of duty. Certainly, too, he was directed to report to the charge of quarters. Although Captain Nowak's testimony concerning his instruction to the accused was not as precise and detailed as it might have been, it seems clear that the latter was not to be permitted to select personally the vineyard in which he was to be a worker. It seems certain either that the Captain verbally designated the labor area him-

self—although he did not think it important fully to inform the court-martial—or that this was to be done by the first sergeant, or by the charge of quarters, as his delegate. Thus a *place* of duty was distinctly involved. We incline to believe that—had the accused secured a truss of grass, retired to the comfort of his barracks, and proceeded to cut it with shears—no one would have had the temerity to suggest that this would have satisfied the obligations imposed on him.

## V

Accordingly, the decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General, United States Army, for reference to the board of review for determination of a legal and appropriate sentence.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring):

I concur.

I have sought to fix a different standard for applying footnote 5 to the Table of Maximum Punishments but a majority of the Court have settled the rule by adopting the gravamen test. Applying that rule, the result reached is correct.

I suggest there might be one method of avoiding some of the difficulties the services are encountering in applying the footnote. It appears to me that, under our concept of lesser included offenses failure to repair might, in many instances, be a lesser included offense of failure to obey. If so, and appropriate instructions are given, a factual determination by members of the court-martial may eliminate the necessity of considering the applicability of the footnote.