UNITED STATES, Appellee

v

WILLIAM A. HAMMOCK, Basic Airman, U. S. Air Force, Appellant

8 USCMA 245, 24 CMR 55

No. 9757

Decided September 13, 1957

Major George M. Wilson argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel Ellis L. Gottlieb and Lieutenant Colonel R. W. Dech.

Captain John W. Fahrney argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Francis P. Murray and Lieutenant Colonel Robert W. Michels.

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of a violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, under a specification alleging the possession of ration cards made out to other airmen in contravention of the provisions of a regulation of Headquarters, United States Air Force in Europe. It adjudged a sentence which includes a bad-conduct discharge.

In United States v Tamas, 6 USCMA 502, 20 CMR 218, we held that, in the absence of allegation and proof of an intent to deceive, the possession of a false ration book is a "disorder . . . punishable by not more than four months' confinement." Under Footnote 5 of the Table of Maximum Punishments set out in the Manual for Courts-Martial, United States, 1951, if an offense "involving a failure to obey" a general order or regulation in violation of Article 92 is specifically listed elsewhere in the Table, the punishment is not that provided for a violation of Article 92, but rather that provided for the specific offense. See United States v Buckmiller, 1 USCMA 504, 4 CMR 96; United States v Lowe, 4 USCMA 654, 16 CMR 228. Since the regulation prohibits an offense already made punishable by the Uniform Code as a disorder, it follows that the maximum punishment is measured by that offense rather than that prescribed for a violation of Article 92. United States v Alberico, 7 USCMA 757, 23 CMR 221. On that basis, the accused's sentence is illegal.

The decision of the board of review in regard to the sentence is reversed, and the sentence is set aside. The record of trial is returned to The Judge Advocate General of the Air Force for submission to the board of review for redetermination of a legal and appropriate sentence.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The accused pleaded guilty to a specification which alleged an Article 92 offense in the following language:

"In that Airman Basic William A. Hammock, US Air Force, Headquarters Squadron, 36th Air Base Group, did at Bitburg Air Base, Germany on or about 22 May 1956, violate a lawful general regulation to wit: paragraph 15c, United States Air Force in Europe Regulation, 176–5 dated 20 September 1955, by wrongfully having in his possession six Air Force Exchange Europe ration cards made out to other airmen."

The case was ordered tried by a special court-martial and, even though such a tribunal is limited in its sentencing power, the punishment imposed is excessive if footnote 5 to the Table of Maximum Punishments is applicable to this offense.

In United States v Tamas, 6 USCMA 502, 20 CMR 218, we held that the possession of a false ration book without intent to deceive was a mere disorder. However, we were not there confronted with the commission of any offense involving the violation of a regulation. I, therefore, start with the premise that Tamas is not dispositive of the issue herein involved.

In United States v Yunque-Burgos, 3 USCMA 498, 13 CMR 54, we were considering a situation in which the wearing of civilian clothes—under ordinary circumstances a perfectly innocent act—was proscribed by a general order. In that instance, we concluded that what might be no more than a mere disorder under some circumstances reached the level of a serious offense when proscribed by regulations governing a critical area where the potentialities for harm from the transgression were great.

In my concurring opinion in United States v Alberico, 7 USCMA 757, 23 CMR 221, I stated as follows:

". . . As I pointed out in my concurring opinion in United States v Loos, supra, a majority of the Court settled its use by adopting the gravamen test. As explained by them, that test requires a comparison of the gravamen of the offense set out in the specification with the charge it

246

is laid under and other Articles under which it might have been laid. Using that principle as a guide, I am required, in this instance, to compare the gravamen of failing to obey a regulation prohibiting the possession of blank passes alleged under Article 92 with the offense had it been pleaded as the offense of unlawful possession of blank passes to the prejudice of good order and discipline under Article 134. Any comparison of the two offenses to ascertain the limits of punishment is influenced by my views of the vice sought to be prevented and the potentialities for harm in the act proscribed. That formula requires an ad hoc determination and in this instance I believe the regulation was enacted to restrict the bartering, selling, or use of pass forms which could be filled in for improper purpose by any member of the Army who would be irresponsible enough to insert false data."

The rule I contended for in Alberico, supra, is consistent with the principles set out in Yunque-Burgos, supra, and I believe this case falls within the sweep of their rationale. Undoubtedly, the reason for promulgating the regulation was to discourage the possession of the tools which make black-marketing activities in foreign countries a matter of ease. When American servicemen are stationed overseas and are able to obtain American made goods which are in short supply in the host country, and resell them through illicit channels, the potentialities for harm to the military services and to the United States Government are great. Undercover diversion of personal property to foreign nationals tends to interfere with the economic system of foreign governments and brings discredit on the United States. Therefore, violation of regulations intended to discourage participation by members of the armed services in those activities should be punished more severely than a mere disorder.

I would conclude that, under the circumstances of this case, the serious aspect of the crime is the violation of the order, and I would affirm the decision of the board of review.