UNITED STATES, Appellee

v

JAMES T. SHOWALTER, Private, U. S. Army, Appellant

15 USCMA 410, 35 CMR 382

No. 18,327

May 28, 1965

*Captain Mervyn Hamburg* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian.*

*Captain John C. Cortesio, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

A general court-martial convened at Seoul, Korea, found the accused guilty of violating a lawful general regulation, assault with a dangerous weapon, alteration of an official leave form, and assault with intent to commit murder, in contravention, respectively, of Uniform Code of Military Justice, Articles 92, 128, and 134, 10 USC §§ 892, 928, and 934. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for five years. The convening authority reduced the findings as to the charge of assault with intent to commit murder to assault with a dangerous weapon, and, reassessing the sentence, approved the penalty imposed by the court. The board of review affirmed, and we granted accused's petition for review upon several issues involving the counts of falsely altering the leave form and violation of the lawful general regulation.

I

The first issue before us inquires into the legal sufficiency of the evidence to sustain the findings of guilty of altering the official leave form. From the transcript, it appears that accused's commanding officer issued him a standard Department of the Army form authorizing him to be absent from 12:00 noon, April 18, 1964, until the same hour on April 21, 1964. According to the form and applicable directives, accused was also thereby entitled to claim a "day of grace" and not actually due to report back to duty until 12:00 midnight, on April 22, 1964. At the time of its delivery to the accused, the form bore no reference to wearing civilian clothing. Following his apprehension for other offenses, however, on April 22, 1964, a search of his person turned up the form, bearing a typed endorsement stating, "EM IS AUTHORIZED TO WEAR CIVILIAN CLOTHES IN I CORE [sic] AREA FOR BUSINESS." At the time of his apprehension, accused was wearing civilian clothing and, earlier on the same day, had been seen departing from his station at East Post, Seoul, Korea, clad in the same manner. An applicable lawful general regulation, to which further reference will be made

**411**

below, forbade wearing such clothing under the described conditions.

We have no difficulty in concluding the evidence is sufficient in law to support the finding of the court-martial that the accused falsely altered the leave paper in question by adding the declaration that he was authorized to wear civilian clothing "IN I CORE [sic] AREA FOR BUSINESS." As we have many times pointed out, the issue of sufficiency before us is one of law, and if the evidence before the fact finders was substantial enough to permit it to infer the existence of each element of the offense charged, necessarily we must uphold their decision. United States v Reid, 12 USCMA 497, 31 CMR 83; United States v Lyons, 11 USCMA 68, 28 CMR 292. Here, the circumstances depicted in the record meet that standard.

The evidence reflects the document in question was delivered to the accused without the false declaration endorsed thereon and was found in his possession, with such change having been made in the interim. The form constituted accused's authority to be absent, and its express terms made its personal possession by him "mandatory at all times." Moreover, the tenor of the false alteration was purported authority for the accused to wear civilian clothing, a garb otherwise forbidden by pertinent regulations, and, not only was he seen to leave East Post so clad, but when apprehended prior to the expiration of his leave, he was still dressed in that fashion.

Hence, we are faced with proven circumstances which would allow the court members to find the paper in question was delivered to accused; was one in which he had a definite interest; remained continuously in his possession until his apprehension; and was obviously altered without authority while he so retained it. These facts clearly permit the inference that he was the individual responsible for the unauthorized addition to its terms. Thus, it has been well stated in State v Regna, 108 NJL 232, 157 Atl 100 (1931), at page 100:

". . . From the very nature of the crime of forgery, it is evident that direct proof of the crime is seldom, if ever, available; and the law established a strong presumption under circumstances such as those existing in the case at bar that the forgery was committed by the defendant. The rule as stated in Bishop's New Criminal Law Procedure, vol. 2, § 436, is: 'If a genuine writing is traced to the defendant, and shown to have come thence mutilated, the jury may presume he did it, but they are not to be required to by instruction. So one's possession of a forged instrument, and his claiming under it, tends to prove the forgery his.' A similar rule is laid down in 12 R.C.L. p. 164, and 26 C.J. 961. In Commonwealth v Talbot, 2 Allen (Mass) 161, at page 163, the writer of the opinion says: 'The jury were rightly instructed that the defendant's possession of the forged paper was strong evidence tending to prove that he forged it, or caused it to be forged,' citing Roscoe's Criminal Evidence (2d Ed.) 453."

And in Commonwealth v Hide, 94 Ky 517, 23 SW 195 (1893), the Supreme Court of Kentucky declared of a similar situation, at page 196:

". . . There is no proof directly showing that he [the accused] inserted the figure in question, but no one else is implicated or interested. He alone got the benefit of the change made, or had possession of the writing, so far as the proof shows, from the time of its execution by Morehead until its delivery to the clerk in its altered condition. It seems to us that the jury could have readily concluded, beyond any reasonable doubt, that the prisoner was guilty. . . ."

Here, too, as noted, the prosecution demonstrated a basis for concluding accused had exclusive possession of the writing from the time he received it from his commander. He, too, "alone got the benefit of the change made." Commonwealth v Hide, supra. And it was necessarily a document in which he had a definite interest, in that it constituted his authority to be absent from

duty and ostensibly, though falsely, to wear civilian clothing. State v Regna, supra; see also State v Ramage, 51 Nev 82, 269 Pac 489 (1928), and Wofford v State, 210 Tenn 267, 358 SW2d 302 (1962). In short, the court "is permitted to draw reasonable inferences from facts proven. . . . [And the Government] was entitled to show by circumstantial evidence that defendant . . . [altered the paper] without authority." State v Hardin, 137 Ore 250, 300 Pac 347, 348 (1931). That is what occurred here, and we cannot hold, as a matter of law, the fact finders had no proven basis for their conclusion. United States v Lyons, supra. The other arguments concerning insufficiency are so insubstantial that no comment by the Court thereon is required.

## II

The second issue presented before us inquires into the sufficiency of the evidence to support the findings of guilty of violation of a lawful general regulation. The directive in question generally provides that civilian clothing may be worn by male Army personnel on post within the discretion of local commanders; while at rest and recreation areas, "but not while traveling between such areas and military posts"; while participating in certain activities not pertinent here; and "[o]n reservations under the jurisdiction of other component commanders" as might be locally prescribed. More specifically, with regard to the Seoul area in which accused was stationed, it declared:

> "3. Civilian clothes. North, Main, and South Post are considered one compound, and civilian clothing may be worn on the compound and by individuals proceeding directly from one part of the compound to another across the MSR. However, civilian clothing may not be worn between compounds, between a compound and an off-post facility (such as a club located in the city of Seoul), nor between an authorized off-post residence and a compound."

The evidence establishes accused was observed leaving *East* Post, his normal duty station, in civilian clothing. When last seen, he was riding in the rear of a vehicle, "a good fifty yards" outside the gate, and traveling away from the compound.

Appellate defense counsel urge before us that the witness who testified to these matters lacks credibility, in that there are discrepancies between his trial testimony and his pretrial statement and that, considered as a whole, his testimony seems highly improbable. Moreover, it is argued, even "if the appellant did stray 100 yards away from the base while wearing civilian clothes, such a trespass is hardly grounds for general court-martial." But these are not matters for us to consider. We must take the evidence as we find it, and the credibility of the witnesses is not to be decided here. United States v Groom, 12 USCMA 11, 30 CMR 11; United States v O'Neal, 1 USCMA 138, 2 CMR 44; United States v Jones, 13 USCMA 635, 33 CMR 167, concurring opinion of Judge Kilday; United States v Kuefler, 14 USCMA 136, 33 CMR 348. And as to whether the exercise by the convening authority of his discretion to refer a charge to trial before a particular type of court-martial is even a reviewable issue, we need say nothing here, for it is clear that there was no abuse of his authority in ordering an individual to stand trial before the highest military trial court upon charges alleging serious offenses such as assault with intent to murder. Once having elected so to try the case, it is not only normal but required that he try all known charges at the same time. Manual for Courts-Martial, United States, 1951, paragraphs 30*f* and 33*h*. Indeed, in granting accused's petition, we refused to consider an assignment of error which alleged the law officer erred in not dismissing the charge now being considered on the ground of improper joinder. We, therefore, reject the defense arguments as immaterial to the question presented.

Turning to the evidence, there is no doubt it is sufficient to establish accused's guilt as alleged. ██ Showalter was directly observed outside *East* Post in civilian clothing, proceeding away from it in a vehicle. The regulation permit-

ted travel only between North, Main, and South Post, when wearing such clothing, and otherwise prohibited its wear in the Seoul area outside compounds. As accused left *East* Post in civilian clothing, he directly violated the order. We conclude, therefore, that the assigned error is without merit.

### III

The last question before us inquires whether the law officer erred to accused's prejudice by advising the court-martial the punishment for violation of the uniform directive was dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the lowest enlisted grade, rather than confinement at hard labor for one month and forfeiture of two-thirds pay per month for one month. Resolution of the question turns upon the applicability of Footnote 5, Table of Maximum Punishments, Manual, supra, paragraph 127*c*. Normally, the punishment for violation of a lawful general regulation is as was stated by the law officer. Footnote 5 nevertheless provides:

"The punishment for this offense [disobedience of the regulation] does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table." [Manual, supra, paragraph 127*c*, page 221.]

Specifically listed "elsewhere in this table" is the offense, in violation of Code, supra, Article 134, of "Uniform, unclean, appearing in, or not in prescribed uniform, or in uniform worn otherwise than in manner prescribed." Manual, supra, page 227. Prescribed therefor is the maximum imposable punishment of confinement at hard labor for one month and forfeiture of two-thirds pay per month for one month.

With much force and logic, the de-fense points out the regulation which accused violated is entitled, "UNIFORM AND INSIGNIA—Wearing of the Uniform," and contends the essence of his misconduct in appearing off-post in civilian clothing was simply that he was, in the language of the Table, supra, "not in prescribed uniform."[1] With equal vigor, the Government relies on our decision in United States v Yunque-Burgos, 3 USCMA 498, 13 CMR 54, as authority for the proposition that wearing civilian clothing is not to be equated to a uniform violation and governed by the terms of Footnote 5.

In *Yunque-Burgos,* supra, it appeared the accused, while serving in occupied Germany, wore civilian clothing in violation of a lawful general regulation similar to the one before us. The Chief Judge declared, at page 500:

"The sole purpose of this provision [Footnote 5] is to prevent the imposition of a more severe punishment for an offense, which, although alleged as a failure to obey, is, in fact, another offense specifically provided in the Table of Maximum Punishments. *Applicability of Footnote 5 is determined in an appropriate case by comparison of the gravamen of the offense set out in the specification with the charge under which it is laid and other articles under which it might have been laid. United States v Buckmiller, 1 USCMA 504, 506, 4 CMR 96, 98; United States v Larney, 2 USCMA 563, 10 CMR 61."* [Emphasis supplied.]

Finding in the case before the Court, the accused's offense was violating an order effective only in Germany, "the occupied country of a former enemy," in which "[o]ur forces . . . [were] in proximity not only to our former enemies but to potential future enemies," it was then reasoned that the regulation was designed to perpetuate the uniform of the soldier as the only means of distinguishing him from the

---

[1] It is interesting to note that, in his pretrial advice, the staff judge advocate apparently viewed the offense in this context. However, although the advice was discussed at the trial, it was apparently considered erroneous by all parties, who relied only on the specific provision of the Table proper in determining the question of maximum penalty.

local populace and to protect both him and our Government from harassing accusations of espionage and related activities in the event he visited the "eastern zones of occupation." In short, the order involved in *Yunque-Burgos* was concluded to be much more than a mere uniform violation, and, in fact, an important directive essential both to the maintenance of military discipline in Europe and the conduct of our foreign relations insofar as the military might become involved therein.

Judge Brosman, concurring separately, emphasized his attachment to the principle that the applicability of Footnote 5 depended upon the gravamen of an accused's violation of an order or regulation. He reiterated his belief in the continued vitality of our earlier decision to that effect in United States v Buckmiller, 1 USCMA 504, 4 CMR 96. Judge Latimer concurred in the result on the basis the governing test should be, not the gravamen of the offense charged, but whether a violation of an order was alleged, in lieu of an offense specifically listed in the Table of Maximum Punishments, in order to permit imposition of a greater penalty.

United States v Buckmiller, supra, did not involve a uniform violation. Rather, it considered the effect of Footnote 5 on a noncommissioned officer's order directing the accused to report to a specified place for duty. In finding that the accused directly and willfully refused to obey the order, the Court held the limitation in the Footnote inapplicable. However, as an example of "a proper application of the footnote to the punishment provisions for Article 92," it referred at length to United States v Carpenter, 11 BR–JC 369, in which accused was found guilty of wearing civilian clothing in violation of certain prescribed uniform regulations, and the Footnote held to govern his punishment. See also United States v Loos, 4 USCMA 478, 16 CMR 52, in which Judge Latimer joined with the Court's promulgation of the gravamen test as determinative of the application of Footnote 5; United States v Alberico, 7 USCMA 757, 23 CMR 221; and United States v Porter, 11 USCMA 170, 28 CMR 394.

We do not deem our decision in *Yunque-Burgos*, supra, dispositive of the issue before us. Here, ▮▮▮▮▮ we are confronted directly with the violation of a regulation which expressly deals with the wearing of the uniform and conduct violative thereof in that the accused wore civilian clothing in lieu of the required military dress. Hence, there cannot be any doubt that, as appellate counsel for the accused argues, the "gravamen" of accused's offense consists of appearing off-post "not in prescribed uniform." Table of Maximum Punishments, Manual, supra, page 227. Thus, the elements of his charged misconduct under Code, supra, Article 92, and of the offense otherwise listed in the Table are the same. United States v Alberico, supra. Hence, under the consistently followed standard for the applicability of Footnote 5, the punishment for violation of the lawful regulation must be limited to that prescribed for the specifically listed crime, *i.e.*, confinement at hard labor for one month and forfeitures for a like period. United States v Buckmiller, supra; United States v Loos, supra; United States v Porter, supra.

In reaching this conclusion, it must be recalled that United States v Yunque-Burgos, supra, interpreted a different regulation's purpose in light of then extant conditions in an occupied nation when international relations were strained and there was active danger of merger of our troops with the local, hostile population by the simple expedient of wearing civilian garments. The years have crept by; our occupation is at an end; and world conditions have changed. Moreover, in the case before us, even the factors present in *Yunque-Burgos* are not pertinent. Accused was stationed in the Republic of Korea, an ally of this Nation, from which there is no easy access to its inimical northern neighbor. It is extremely unlikely that either he or his fellows would be successful in any attempt to merge with an Asiatic populace by simply wearing a civilian suit. Moreover, we have ourselves noted the

relaxation of tension in Korea and, indeed, refused to characterize service there as, *per se*, important. United States v McKenzie, 14 USCMA 361, 34 CMR 141. In short, our decision in *Yunque-Burgos,* supra, dependent as it was upon the interpretation of the dominant purpose of a particular regulation in light of then extant circumstances, may not be made the generalized basis for holding that all uniform regulations, despite the contrary provisions of the Table of Maximum Punishments, are to be punished as a major felony. Under the circumstances of this case, we find the law officer's instruction on maximum sentence prejudicially erroneous.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. The board may purge the effect of the error involved by reassessment of the punishment imposed and approved below.

Chief Judge QUINN and Judge KILDAY concur.