UNITED STATES, Appellee,

v.

Gregory D. TIMMONS, Aviation Structural Mechanic Airman Recruit, U. S. Navy, Appellant.

No. 40646.

NCM 80–0775.

U. S. Court of Military Appeals.

Aug. 9, 1982.

For Appellant: *Captain Joseph M. Poirier*, USMC (argued).

For Appellee: *Lieutenant Colonel A. P. Tokarz*, USMC (argued); *Commander T. C. Watson, Jr.*, JAGC, USN (on brief).

## OPINION OF THE COURT

COOK, Judge:

The accused was tried by special court-martial for two unauthorized absences, three failures to go to his appointed place of duty, willfully disobeying the order of a petty officer, unlawfully attempting to strike a petty officer and violation of a lawful written order, in violation of Articles 86, 91 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891 and 892, respectively. He was convicted, despite his pleas, of four violations of Article 86, *supra*, and, by exceptions and substitutions, of failing to obey an order of a petty officer. The adjudged and approved sentence was a bad-conduct discharge. The Navy Court of Mil-

itary Review affirmed in a per curiam opinion. We specified the following issue (11 M.J. 297):

WHETHER FOOTNOTE 5 SHOULD BE APPLIED TO THE SPECIFICATION UNDER CHARGE II AND THEREBY RENDER THE MAXIMUM PUNISHMENT SUCH THAT THE INSTRUCTIONS ON SENTENCE WERE PREJUDICIALLY INADEQUATE UNDER *UNITED STATES V. FERREE*, 16 U.S.C.M.A. 506, 37 C.M.R. 126 (1967).

For the reasons set forth below, we affirm.

Our specified issue contains two issues: the applicability of Footnote 5 of the Table of Maximum Punishments, para. 127*c*, section A, Manual for Courts-Martial, United States, 1969 (Revised edition), to the Article 92 offense;[1] and, the effect of Section B, *Permissible additional punishments*, following the Table above, in relation to the evidence of two previous convictions of the accused by special courts-martial which were introduced during the sentencing portion of the trial. We will discuss them in that order.

I

[1] Footnote 5 appears in the Table of Maximum Punishments with reference to the two clauses of Article 92, *supra*, relating to "[v]iolating or failing to obey any lawful general order or regulation" and "[k]nowingly failing to obey any other lawful order." In the Manual for Courts-Martial, United States, 1951, the language of Footnote 5 was:

The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table.

The Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, gives the purpose of this note as follows:

Bad-conduct discharge and confinement for six months, which are prescribed in

Article 91 for willful disobedience of the lawful order of a noncommissioned or petty officer, were also adopted as the maximum punishment for knowingly failing to obey "any other lawful order" under Article 92. The footnote, which applies to the first two entries under Article 92, is designed to eliminate the confusion which could result from a contention that a violation of other specifically listed offenses, for example, disobedience of a superior officer under Article 90, or willful disobedience of the lawful order of a warrant officer or noncommissioned or petty officer under Article 91, or wrongfully appearing in civilian clothing under Article 134, should be punished as a violation of Article 92.

*Id.* at 196.

As might be expected, the ambiguous nature of the footnote required our attention soon after the enactment of the Uniform Code. In *United States v. Buckmiller*, 1 U.S.C.M.A. 504, 4 C.M.R. 96 (1952), the accused was convicted of failure to obey the lawful order of a noncommissioned officer. The record of trial disclosed that the acting first sergeant of the accused's unit ordered the accused to report for duty. The accused stated that he did not have to work and walked away. He was convicted and sentenced on the theory of a violation of Article 92. The question of the correctness of the sentence imposed was certified to us by The Judge Advocate General of the Army. We considered the maximum punishments permitted for violation of a lawful order under Article 92 (bad-conduct discharge, confinement at hard labor for 6 months and total forfeiture of pay and allowances) and the maximum punishment for "[f]ailing to go to, or going from, the appointed place of duty" in violation of Article 86, UCMJ, 10 U.S.C. § 886 (confinement at hard labor for 1 month and forfeiture of two-thirds pay for a like period) in terms of the applicability of Footnote 5. We rejected a "technical and entirely literal

---

1. There is also the issue whether the military judge should have instructed the court members as to the applicability of Footnote 5 in their sentencing deliberations. Since this portion of the issue was neither briefed nor argued, we do not decide it.

interpretation of the footnote lead[ing] to a conclusion that in no case can an accused be convicted of knowingly failing to obey a lawful order under Article 92, *supra*, if the circumstances of the offense also involve, in any way, 'failing to go to . . . the appointed place of duty' under Article 86." *Id.* at 505, 4 C.M.R. at 97. Instead, we believed that "[t]he footnote becomes much more sensible if interpreted to require a comparison of the gravamen of the offense set out in the specification with the charge it is laid under and other articles under which it might have been laid." *Id.* at 506, 4 C.M.R. at 98. Our analysis of the record led us to the conclusion that the "gravamen of the offense" was "the disrespect for authority as evidenced by the disobedience of the direct order of a superior," which constituted an offense of a far more serious character than a mere failure to go to routine duties. We concluded:

> The gravamen of the offense disclosed by the acts alleged in the specification here was a knowing failure to obey the direct, personal order of a superior. As such, the accused could legally have been sentenced for a violation of Article 92, *supra*, despite the fact that the acts alleged may also be interpreted to constitute a violation of Article 86(1), *supra*.

*Id.* at 506. Judge Latimer would have limited application of the footnote to "those cases where there was a fair probability that the accused was guilty of a listed offense, but was charged with failure to obey an order to permit imposition of a greater

sentence." *Id.* at 508, 4 C.M.R. at 100. However, he did not feel that the case fit that criterion, so he concurred in the result.

Subsequently, in *United States v. Loos*, 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954), we reiterated the "gravamen of the offense" test established in *Buckmiller*. Loos had been convicted by summary court-martial, and the sentence included hard labor without confinement. The company commander ordered the accused to cut grass daily and to report to the charge-of-quarters at certain times for signing in, obtaining grass cutting equipment and signing out. One day the accused reported for the detail but left prior to the designated time. The next day he did not report at all. We held that upon the record before us, the conduct of the accused amounted to nothing more than a failure to perform routine duties and that Footnote 5 did apply. However, we did recognize that "a superior officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck—and thus remove the failure to perform it from within the ambit of Article 86(1), *supra*." *Id.* at 480–81, 16 C.M.R. at 54–55. However, finding no evidence of record that the company commander sought to do this, we held that Footnote 5 set the maximum penalty at that authorized by Article 86(1).

Since these early cases, we have adhered to the "gravamen of the offense" test and see no reason to depart from it now.[2]

2. This language was changed in the Manual for Courts-Martial, United States, 1969 (Revised edition), as follows:

> This punishment does not apply in the following cases:
> (1) If in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed in this table.
> (2) If the violation or failure to obey is a breach of restraint imposed as a result of an order.
> In these instances, the maximum punishment is that specifically prescribed elsewhere in this table for the offense.

The revision of Footnote 5 was made to conform to various decisions of this Court. *See* Air Force Summary of Changes in the Manual for Courts-Martial, 1969, p. 53. In *United States v. Showalter*, 15 U.S.C.M.A. 410, 35 C.M.R. 382 (1965), we applied the "gravamen of the offense" rationale in holding a violation of a theatre regulation regarding wearing of civilian clothing to be covered by Footnote 5. *Id.* at 415, 35 C.M.R. at 387. However, in reaching that conclusion we took cognizance of "the relaxation of tension in Korea" and chose not to interpret our earlier decision in *United States v. Yunque-Burgos*, 3 U.S.C.M.A. 498, 13 C.M.R. 54 (1953), as establishing a "generalized basis for holding that all uniform regulations, despite the contrary provisions of the Table of Maximum Punishments, are to be punished as

Turning to this case, we note that the accused was assigned to a restricted barracks wherein "the restricted personnel . . . [were] required to check in and out through the desk watch. The desk watch also mustered the restricted men at times set forth in the restricting orders. At these musters, the restricted men were required to report dressed in the appropriate uniform for the particular time.[3] On August 1, the accused reported for the evening muster dressed "in the dungaree uniform." However, the required uniform for that particular muster "was the summer blue uniform commonly called 'Salt and Pepper.'" The petty officer performing master-at-arms duty asked the accused why he was improperly attired, and the accused responded "that he did not have his [blue] uniform . . . at the time." The petty officer "told Timmons to be in the proper uniform by that time the next day." The following day the accused reported for the evening muster in an improper uniform. The accused testified that his "salt and pepper uniform" had been soiled and damaged in storage while he was in confinement and that he had not been paid during the period so as to enable him to have some parts of his uniform cleaned and other parts replaced. He also testified that he told the master-at-arms of his predicament and was informed in response to get his uniform in proper condition "as soon as possible after payday comes up." In direct conflict, the petty officer testified that the accused did not tell him about his difficulties with pay, and that if he had, he "would have given him 'perhaps three maybe four days'" to make the arrangements.

With the evidence in this posture, the court members wrote on the findings worksheet next to that part pertaining to the Article 91 specification, "But we find him guilty of Art. 92 of the UCMJ." The military judge then instructed the members

how to arrive at this result with proper exceptions and substitutions. After closing again, the members found the accused guilty of a violation of Article 92.

Giving due regard to the findings of the court and considering the record as a whole, we hold that the "gravamen of the offense" of which the accused was convicted lies within the ambit of "appearing in, or not in prescribed uniform," in violation of Article 134, UCMJ, 10 U.S.C. § 934.[4] Hence, Footnote 5 applies and the maximum punishment for this offense is confinement at hard labor for 1 month and appropriate forfeitures. This being the case, the maximum punishment for the offenses of which the accused was found guilty totals only 5 months' confinement at hard labor and the accompanying forfeitures, and does not, therefore, authorize the imposition of a bad-conduct discharge.

II

■ The military judge was cognizant of the problem above. In computing the maximum sentence, he said: "The maximum punishment is the jurisdictional maximum of the court. I am now consulting the Manual to find if that's because of the Article 92 offense or because of Section B." However, without further elaboration, the military judge instructed the members that the maximum punishment they could impose included a bad-conduct discharge, confinement at hard labor for 6 months and forfeitures.

Apparently the military judge relied upon Section B in making his computations. This provides in pertinent part:

If an accused is found guilty of an offense or offenses for none of which dishonorable or bad-conduct discharge is authorized, proof of two or more previous convictions adjudged by a court during

---

a major felony." 15 U.S.C.M.A. at 416, 35 C.M.R. at 388.

3. Apparently the "dungaree uniform" was proper attire for other musters during the day.

4. What makes this a close case is the fact that when the accused was given the order to be in

proper uniform, he was already in violation of Article 134, UCMJ, 10 U.S.C. § 934. Under more aggravated circumstances it might well be found that the authority of the superior was properly used to prevent continued defiance of uniform regulations.

the three years next preceding the commission of any offense of which the accused stands convicted will authorize bad-conduct discharge and forfeiture of all pay and allowances.

Para. 127c, Section B, Manual, *supra*.

■ The military judge has the duty to instruct the members as to the maximum punishment authorized for the offenses of which the accused has been found guilty, subject, of course, to the jurisdictional limitations of the special court-martial. Para. 76b(1), Manual, *supra*; Article 19, UCMJ, 10 U.S.C. § 819. But, "[i]f an additional punishment is authorized because of the provisions of 127c, Section B, however, the military judge . . . *should* advise the court of the basis for the increased permissible punishment." Para. 76b(1), (Ch. 1) Manual, *supra* (emphasis added). Here no such instruction was requested and none was given.

Facing the same situation in *United States v. Hutton*, 14 U.S.C.M.A. 366, 370, 34 C.M.R. 146, 150 (1964), we held:

> In the absence of such advice, the court was unlikely to appreciate that Hutton was being punished for offenses for which a punitive discharge was not authorized and fairly to balance the appropriateness of this severe penalty against his excellent prior record. In short, under the peculiar facts of this record, we are of the opinion that the atmosphere of the court's deliberations should have been illuminated by a full explanation of the reason for the increase in punishment, thereby permitting it properly to weigh all factors attending the sentencing process in a correct fashion. [Citations omitted]. In light of the extensive evidence in mitigation and extenuation, we are required to hold that there is a fair risk that no punitive discharge would have been adjudged had the court been so advised.

Chief Judge Quinn dissented. He felt that "[i]n general, knowledge of the relative seriousness of the offenses found, and the part each offense plays in the determination of the maximum to be considered by the court-martial, can lead to a more appropriate sentence," but he "doubted . . . whether the general rule is helpful to an accused in a case such as this, in which the maximum is based in part upon previous convictions." *Id.* at 371, 34 C.M.R. at 151.

Later in *United States v. Ferree*, 16 U.S.C.M.A. 506, 37 C.M.R. 126 (1967), we found error in the "[f]ailure [of the president] to correctly instruct a court that a bad-conduct discharge is imposable only because of two prior convictions" and that "the error has worked to the accused's prejudice." *Id.* at 508, 37 C.M.R. at 128. However, the rule was made absolute in *United States v. Goodbear*, 16 U.S.C.M.A. 593, 37 C.M.R. 213 (1967), where we held the absence of the clarifying instruction was prejudicial error without consideration of any prejudice to the accused. Although that opinion was unanimous, Chief Judge Quinn later questioned application of the *Hutton* opinion in *United States v. Yocom*, 17 U.S.C.M.A. 270, 273–74, 38 C.M.R. 68, 71–72 (1967):

> I am sure I do not misconceive the import of . . . [*United States v. Hutton*] by saying it does not hold that omission of an instruction on the effect of evidence of previous convictions is an automatic ground for reversal. As I read the Court's opinion in *Hutton*, it determined only that the instructional omission is error, but it is not prejudicial error unless "there is a fair risk that no punitive discharge would have been adjudged had the court been so advised."

The opinion in this case apparently accepts, not only the rationale of *Hutton*, but also its determination that the instructional error does not justify reversal unless there is a fair risk of prejudice. Yet other cases decided today on the authority of this opinion appear to make reversal of the sentence an inexorable consequence of the failure to instruct. If this is the import of the present opinion, I disagree with it.

We believe, with the late Chief Judge Quinn, that the failure to give the instruction must be examined along with the other evidence in the record to determine whether

*prejudicial* error occurred. Here the requirement to give the instruction was clouded by the applicability of Footnote 5 to the Article 92 finding. Neither counsel requested the instruction and both agreed that the military judge's instructions were correct.[5] The fact of the previous convictions of the accused, as well as his incarceration in the San Diego County jail, were well known to the court members as explaining his assignment to the restricted men's barracks, and as the cause for the soiling of his blue uniform. In addition, the members must have considered both the convictions and the nature of the offenses giving rise to the previous courts-martial in arriving at the sentence to a bad-conduct discharge only. Finally, the forum was a special court-martial with its attendant limitation on punishments.

With all these factors in mind we find no fair risk of prejudice in the failure of the military judge to give the augmented punishment instruction.

The decision of the United States Navy Court of Military Review is affirmed.

Judge FLETCHER concurs.

EVERETT, Chief Judge (concurring):

In view of the use of the "unitary sentence" in military justice, I have some doubts about the correctness of the premise on which *United States v. Hutton*, 14 U.S.C. M.A. 366, 34 C.M.R. 146 (1964), is based. *See United States v. Gutierrez*, 11 M.J. 122, 124 (C.M.A.1981) (Everett, C. J., concurring in the result). Certainly in the absence of objection, there was no prejudice to appellant here.

---

5. Since the instruction can also work to the detriment of the accused in effectively labeling him as a recidivist, it might well be that defense counsel did not wish it given. At least his failure to request it is a factor in determining the existence or absence of prejudice. *Cf. United States v. Salley*, 9 M.J. 189 (C.M.A. 1980).