UNITED STATES, Appellee

v

WILLIE JAMES CAVE, Private, U. S. Army, Appellant

17 USCMA 153, 37 CMR 417

No. 20,045

July 28, 1967

*Captain Thomas D. Wise* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Paul V. Melodia*.

*Captain David E. Wilson* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski* and *Lieutenant Colonel David Rarick*.

## Opinion of the Court

QUINN, Chief Judge:

A series of events between 7:30 and 10:30 on the morning of April 22, 1966, at Fort Bragg, North Carolina, led to a variety of charges against the accused, ranging from assault upon a fellow soldier to disrespect to a superior officer and willful disobedience of the order of another officer. The charges were tried by a general court-martial. The court acquitted the accused of one assault specification, but found him guilty of all the other offenses and sentenced him to a bad-conduct discharge, confinement at hard labor for two years, and accessory penalties.

On this appeal, the accused contends he was prejudiced as to the sentence by an instruction that specification 3, Charge II, and specification 1, Charge IV, were separately punishable. The latter specification alleged that, in the vicinity of the North Dispensary in the 82d Airborne Division area, the accused unlawfully struck Private First Class Russell D. Cadwallader with his hands. Specification 3, Charge II, alleged that on the same day, while in the orderly room of his unit, the accused willfully disobeyed a lawful command from a superior officer "to return to his seat and to quit assaulting his guard." Before the order, the accused had been directed to remain in the orderly room, and Cadwallader was detailed to guard him. However, the accused attempted to leave and struggled with Cadwallader, who tried to keep him in the room. The executive officer of the company, First Lieutenant Luis C. Barcena, heard the "commotion." He went into the orderly room and saw the struggle. According to his testimony, he ordered the accused to stand "at atten-

tion," and "go back" to his seat.[1] The accused "didn't follow the order," and continued to pummel Cadwallader. Eventually, Lieutenant Barcena succeeded in calming the accused. About one hour later, the accused complained of a headache and was given some aspirin. Twenty minutes later, he again complained about his headache. Advised of the complaints, the commanding officer, Captain James R. Ellis, told Barcena and Cadwallader "to escort" the accused to the dispensary across the street. They did so. After the accused talked to a doctor, the trio left the dispensary to return to the orderly room. It was then about 10:30 a.m. As the group reached the sidewalk in front of the company building, the accused hit Cadwallader "with both hands." This incident is the subject of specification 1, Charge IV.

It is now contended that the punishment for willful disobedience of Lieutenant Barcena's order cannot be greater than that prescribed for assault and battery. The contention has two aspects. The first is the applicability of footnote 5 of the Table of Maximum Punishments, which provides that the punishment set out for violating a regulation or order "does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere" in the Table. Manual for Courts-Martial, United States, 1951, page 221; United States v Loos, 4 USCMA 478, 16 CMR 52. The second is that, according to the evidence, Lieutenant Barcena's order, while given in the orderly room, is inte-

---

[1] Captain James R. Ellis, the unit commander, also responded to the "commotion." He testified he heard First Lieutenant Luis C. Barcena also order the accused to " 'stop assaulting your guard.' "

grally connected with the second assault on Cadwallader, on the way back from the dispensary, so that the two are merely parts of the "same transaction." See United States v Walker, 8 USCMA 640, 25 CMR 144. In other words, as viewed by appellate defense counsel, the willful disobedience offense, which normally carries a penalty of confinement at hard labor for five years, is limited by the evidence and footnote 5 to the punishment listed in the Table of Maximum Punishments for simple assault and battery, namely, confinement at hard labor for six months. Manual for Courts-Martial, supra, page 224.

A third aspect of the issue is whether willful disobedience of an order to cease doing a specific act, which independently constitutes a violation of a provision of the Uniform Code of Military Justice, can raise the punishment from that listed for the specified offense to that provided for the order; or, phrased in terms of the accused's argument, is willful disobedience of an order to stop committing a simple assault and battery punishable by five years confinement at hard labor, which is authorized for a violation of Article 90, Code, supra, 10 USC § 890, or by confinement at hard labor for six months, which is the maximum for assault and battery. See United States v Renton, 8 USCMA 697, 702, 25 CMR 201; United States v Hammock, 8 USCMA 245, 24 CMR 55.

All three aspects of the issue assume Lieutenant Barcena's order to ██ the accused was merely to stop assaulting Cadwallader. The assumption is not supported by the specification and the evidence. The order, as alleged and proven, had two parts, not one. Unmentioned in the argument is the part of the order that directed the accused to return to his seat. The accused willfully refused to obey this part of the order, as well as that dealing with the assault on Cadwallader. The order was direct and personal;

and the accused's conduct in disobeying it manifests disrespect for authority, rather than mere noncompliance with a routine obligation.[2] Consequently, footnote 5 does not apply. United States v Buckmiller, 1 USCMA 504, 508, 4 CMR 96. It is also apparent that the order did not prohibit conduct already proscribed by the Uniform Code of Military Justice. Thus, the order was separately punishable. The law officer's instructions on the maximum punishment, therefore, were correct.

What transpired in this case invites some soul-searching. The chain of events began with a simple disagreement between the accused and a sergeant and could easily have ended with nothing more serious than a charge of disrespect to a noncommissioned officer. Unfortunately for the accused, the matter burgeoned into offenses involving three officers, and carrying a combined penalty extending to a dishonorable discharge and confinement at hard labor in excess of twenty years. The record of trial indicates that one of the sergeants involved in the incidents expressed regret "that the Army has to put up with son-of-a-bitches like" the accused. Yet, the accused's "ratings prior to his present assignment were thrice 'Excellent-Excellent' "; and the accused had no previous court-martial convictions and no Article 15 punishments. Before these offenses, the accused's company commander, Captain Ellis, had talked to him and learned he had "a personal problem at home" involving his wife. It was "obvious" to the Captain that the accused "needed help," and he offered to obtain legal and medical assistance, but, regrettably, the accused rejected the proffer.

In his learned treatise on military law, Colonel Winthrop points out that ██ it "has been repeatedly insisted upon" that "express orders should never be given to a soldier when under the influence of intoxicating drink." Win-

---

[2] For purposes of this appeal, we assume that an earlier statement to the accused by Captain Ellis that he "sit back down in the chair . . . over in the far corner of the room" imposed a duty upon him to remain in the chair until allowed to leave the orderly room.

throp's Military Law and Precedents, 2d ed, 1920 Reprint, footnote 10, page 573. See also United States v Graney, United States Coast Guard Summary Court-Martial, 20880.5, decided October 1, 1958. The same can be said as to a person under the apparent influence of great emotional stress, at least when the primary and immediate object of the order is to quiet the individual or to get him to appreciate the need for his adherence to law and military discipline. There is much practical wisdom in the reminder that in a situation where the accused is laboring under great emotional strain, so that it is reasonably predictable from his condition that he will not respond to an order to be quiet, to stand at attention, or the like, such commands should be avoided.

Recourse to a court-martial for disobedience of orders is wholly consistent with good leadership. Everett, Military Justice in the Armed Forces of the United States, page 2 (1956). But, sometimes, superiority of judgment and rank may be better proved by forbearance than by the findings of guilty of a court-martial. We are not authorized to review the severity of this sentence (United States v Christopher, 13 USCMA 231, 32 CMR 231), but, as defense counsel argued at trial, from the standpoint of mitigation, all the wrongs committed by the accused can be regarded as "just one long transaction."

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.