UNITED STATES, Appellee

v

JOHN C. WILSON, Private, U. S. Army, Appellant

19 USCMA 100, 41 CMR 100

No. 22,023

December 5, 1969

*Peter E. Rindskopf, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Howard Moore, Jr., Esquire,* and *Major James M. Yelton, Jr.*

*Captain James S. Mathews* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel David Rarick, Major R. Kevin McHugh, Major Edwin P. Wasinger,* and *Captain Joseph M. Allen, Jr.*

### Opinion of the Court

QUINN, Chief Judge:

A few days after he was notified that his application for discharge from the Army as a conscientious objector was denied, the accused absented himself without authority from his company. He remained away from July 8, 1968, to July 13, 1968.

The accused returned to camp attired in civilian clothing. In the company orderly room he gave the first sergeant a letter addressed to the company commander. The letter briefly reviewed the accused's military service and the evolution of his convictions of conscience against military service. His concluding comments were as follows:

". . . I have applied for status as a conscientious objector and have been refused—now I am called upon to deny my beliefs because my questionaire [sic] somehow didn't convince the Department of the Army of my 'sincere religious training and belief.' So what am I to do?

100

As I see, I can no longer just *claim* to be a conscientious objector; I must also begin to act like one. Consequently, I will no longer continue to give my cooperation to military authority. I will refuse to wear the uniform of a soldier ever again. I am doing this out of my deeply felt convictions concerning the use of war as a political instrument, and because the Army has given me no other alternative."

Captain R. N. Odom (then a first lieutenant) had assumed command of the company on July 5, 1968. He read the letter and discussed it with the first sergeant; then he conferred in person with the Battalion Executive Officer and the two of them conferred further with the Brigade Executive Officer. After these conferences, Captain Odom returned to the company and ordered the accused to put on his military uniform. The accused refused to obey the order and was escorted to the stockade. The accused was later charged with the six-day unauthorized absence and willful disobedience of the lawful command of Captain Odom "to put on a military uniform between the hours of 1334 hours, 13 July 1968 and 1400 hours, 13 July 1968." A general court-martial convicted him of these charges and sentenced him to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years.

At trial, the law officer instructed the court-martial, in part, as follows:

". . . Personal scruples or qualms, whether based upon religious convictions, personal philosophy, or otherwise, are no defense to the offense of willful disobedience of the order as alleged . . . in the specification under the first charge."

The correctness of the instruction is challenged on this appeal.

The instruction in issue is an elaboration of a statement in the Manual for Courts-Martial, United States, 1951, to the effect that it is not a defense to a charge of willful disobedience of the command that performance of the command would involve "a violation of the religious scruples of the accused." Manual, supra, paragraph 169b, restated in Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 169b. In his landmark text on military law, Colonel Winthrop refers to discussions of the subject in England and notes that conflict with religious scruples was held "insufficient as a defence" to a charge of disobedience. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 576–577.

Recently, we reviewed the dilemma of a person in the military service who develops convictions of conscience that conflict with his military duties. United States v Noyd, 18 USCMA 483, 40 CMR 195. His position is like that of the civilian whose religion or conscience is in conflict with lawful orders of the Government. Speaking of the latter, the Supreme Court of the United States has said that to allow scruples of personal conscience to override the lawful command of constituted authority would "in effect . . . permit every citizen to become a law unto himself." Reynolds v United States, 98 US 145, 167, 25 L Ed 244 (1879). As *Noyd* indicated, the freedom to think and believe does not excuse intentional conduct that violates a lawful command. It may be that Captain Odom should have sought to persuade before resorting to the "tremendously *powerful force*" of a direct *command* (United States v Jordan, 7 USCMA 452, 454, 22 CMR 242), but we are not concerned with the wisdom of his action. See United States v Cave, 17 USCMA 153, 37 CMR 417. If the command was lawful, the dictates of the accused's conscience, religion, or personal philosophy could not justify or excuse disobedience. United States v Noyd, supra, at page 491; see also United States v Taylor, 37 CMR 547, 552; United States v Crouch, 415 F2d 425 (CA 5th Cir) (1969); State v Cox, 138 Maine 151, 23 A 2d 634 (1941). It follows, therefore, that the law officer's instruction was correct.

The decision of the board of review is affirmed.

Judges FERGUSON and DARDEN concur.