## UNITED STATES

v.

Thomas J. GREENE, 532 50 4524, Seaman Apprentice (E-2), U. S. Naval Reserve.

NCM 79 0856.

U. S. Navy Court of Military Review.

Sentence Adjudged 17 Jan. 1979.

Decided 11 Feb. 1980.

CAPT Allan H. Meltzer, USMCR, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, GREGORY and GLADIS, JJ.

GLADIS, Judge:

The accused was convicted at a special court-martial bench trial, pursuant to his pleas, of willful disobedience of lawful orders of superior commissioned officers (two specifications) and of a superior chief petty officer and disrespect to a superior chief petty officer, in violation of Articles 90 and 91, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. §§ 890 and 891. Contrary to his pleas, he was also convicted of willful disobedience of a superior petty officer and disrespect to a superior chief petty officer, in violation of Article 91, UCMJ, 10 U.S.C. § 891. The sentence, consisting of a bad-conduct discharge, confinement at hard labor for 2 months, forfeiture of $265.00 per month for 4 months, and reduction to pay grade E–1 was approved by the convening authority. The officer exercising general court-martial jurisdiction probationally suspended the discharge. A successor vacated the suspension pursuant to Article 72, UCMJ, 10 U.S.C. § 872.

Among other things, the accused contends that he was prejudiced by being charged with three violations of orders, when the ultimate offense committed was a failure to go to his appointed place of duty, and that there was an unreasonable multiplication of charges. Finding that the first order violation was properly charged as the ultimate offense and that the accused was not prejudiced on sentencing by his conviction of additional orders violations which were considered multiplicious, we modify the findings and affirm the sentence.

The following facts gleaned from the record are pertinent to the accused's contentions on appeal. The accused returned to his ship on the evening of 30 November 1978. As a messman, he was required to report to the messdecks at 0530 on 1 December for duty. Having obtained his gear from the Chief Master at Arms about 0800 on 1 December 1978, he was ordered to stow it in his locker. (R. 53). Observing the accused in the berthing compartment, Petty Officer B, supervisor of the messmen, ordered him to put on his shirt, go to the messdecks, and help the other messmen. The accused refused to do so. About 0820, Petty Officer B repeated the order. The accused replied with vulgar language and again refused to obey. (R. 37). Disobedience of B's order is the subject of specification 1 of Charge II, alleging a violation of Article 91, UCMJ. B advised LTJG H, the Supply Officer, that the accused would not go to the messdecks. About 0830, H went to the berthing compartment, found the accused stowing his gear, and ordered him to be on the messdecks at 0900. The accused disobeyed this order. At 1015 LT Z, the Executive Officer, went to the berthing compartment and ordered the accused to go to the galley (part of the messdecks) and report to Petty Officer S for work immediately. The accused also disobeyed this order. His disobedience of the orders of H and Z is the subject of specifications 1 and 2 of Charge III, which allege violations of Article 90, UCMJ. The accused was convicted, contrary to his pleas, of violating B's order and, pursuant to his pleas, of violating H and Z's orders.

In *United States v. Morris*, No. 78 1294, 7 M.L.R. 2143 (N.C.M.R. 22 March 1979), this Court quoted with approval the following language from *United States v. Wilson*, No. 75 1879, 4 M.L.R. 2300 (N.C.M.R. 26 February 1976):

The law is well settled in this area. If an accused disobeys an order to do that which he already had a duty to do, his disobedience cannot be made a crime separate and more serious than his failure to perform his preexisting duty. The latter failure is the accused's "ultimate offense;" and, particularly where that offense is a failure to perform some routine obligation, he may be charged with that and no more. It is improper to escalate criminality by ordering him to perform his preexisting duty, and then charge him not with his "ultimate offense," but with disobedience of the order. That is what happened in the instant case and it has created error prejudicial to appellant. *United States v. Sidney*, 23 U.S.C.M.A. 185, 48 C.M.R. 801 (1974); *United States v. Jenkins*, 23 U.S.C.M.A. 365, 368, 47 C.M.R. 120 (1973); *United States v. Wartsbaugh*, 21 U.S.C.M.A. 535, 540–41, 45 C.M.R. 309 (1972); *United States v. Nixon*, 21 U.S.C.M.A. 480, 484, 45 C.M.R. 254 (1972); *United States v. Bratcher*, 19 U.S.C.M.A. 125, 128, 39 C.M.R. 125 (1969).

In *United States v. Britt*, No. 77 1704 (N.C.M.R. 23 December 1977) (unpublished), this Court distinguished *Wilson*, saying:

We do not dispute the general principle that it is improper to make an unreasonable multiplication of charges or to attempt to increase the punishment by ordering a person to do that which he had a preexisting duty to do. *See United States v. Barnes,* 49 C.M.R. 108 (N.C.M.R. 1974), and cases cited therein. *See also United States v. Wilson,* No. 75 1879 (N.C.M.R. 26 February 1976). This is not, however, always the case. In those situations where it becomes necessary for a superior to bring forth the full force of his office, failure to perform a preexisting duty can be transformed into the willful disobedience of an order.

The Air Force Court of Military Review was confronted with a situation of this latter type in *United States v. Cates,* 45 C.M.R. 597 (A.F.C.M.R.1972). In that case, the accused, a conscientious objector, refused to perform his duties and was charged with violating the direct order of a superior officer "to perform military duties as a Military Public Health Technician." On appeal, the defense argued that the nonperformance of a routine duty may not be charged as the violation of a direct order. The Air Force Court held "The short answer to this contention is that the commander, by supporting this otherwise routine duty with the full authority of his office transformed a routine duty into a direct, personal, and particular requirement within the ambit of Article 90." *Id.,* at 603, *citing United States v. Wilson,* 19 U.S.C.M.A. 100, 41 C.M.R. 100 (1969) (willful disobedience of order to wear a uniform); *United States v. Cave,* 17 U.S.C.M.A. 153, 37 C.M.R. 417 (1967) (willful disobedience of order to stop assaulting a guard); *United States v. Loos,* 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954) (order to perform hard labor imposed by summary court-martial was not a direct, personal order).

In *United States v. Rector,* 49 C.M.R. 117, 118 (N.C.M.R.1974), this Court rejected contentions similar to those of the accused in the instant case, analyzing and distinguishing *Bratcher* and *Wartsbaugh,* both *supra,* as follows:

The appellant argues that, despite his guilty plea, his conviction of wilful disobedience of his superior petty officer's order should not stand because that order directed him to go to a place where he was otherwise required to be. He points to his statements during the providence inquiry at trial that one of the leading chiefs had assigned the movie cleanup detail earlier that day and that a watch bill had been prepared showing that assignment. He claims the petty officer's order was merely a reminder of a prior assignment. The government in its brief disagrees with that assessment of the facts and argues that the appellant's offense was properly charged as a violation of Article 91 because the petty officer's order was not a mere reminder nor a mere admonition to obey the law.

The appellant cites, among other cases, the Court of Military Appeals' opinions in *United States v. Bratcher,* 18 U.S.C.M.A. 125, 39 C.M.R. 125 (1969) and *United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 45 C.M.R. 309 (1972) in support of his position. The cogent analysis of *Bratcher* in *United States v. Nelson,* 42 C.M.R. 877 (A.M.C.R.1970) is equally applicable here. *Bratcher* held that an order to obey the law can have no validity beyond the limit of the "ultimate offense" committed. In *Bratcher* the accused was ordered by the company commander to perform such tasks as the first sergeant might give him. After the accused stated that he would refuse to obey any such order he was ordered by the first sergeant to cut the grass and refused to do so. He was charged among other things with wilful disobedience of both orders in violation of Articles 90 and 91 of the Code. Judge Ferguson writing for a unanimous Court dismissed the specifications alleging disobedience of the company commander's order not because they were illegal but simply because they could have "no legal efficacy beyond the charge of disobedience of the first sergeant's order"—an offense of which the accused had also been convicted.

The situation at bar is clearly distinguishable from *Bratcher*. In the case before us absence without leave was not charged. The petty officer's order was not deprived of legal effect. The accused in the present case was ordered to report to a designated location for a specific purpose whereas in *Bratcher*, also a guilty plea case, the order did not contemplate performance of some special function.

The present case is also distinguishable from *Wartsbaugh*. *Wartsbaugh*, stands for the proposition that where the authority for an officer's order is derived from and based on prohibitions set forth in a written directive from higher authority, the offense should be charged as a violation of that written directive which constitutes the ultimate offense committed. . . .

Appellant's crime was wilful disobedience of a lawful order from his superior petty officer; it was not a mere unauthorized absence nor was the order just a remainder to obey the law as appellant contends. *United States v. Adams*, No. 70 3443 (N.C.M.R. 7 May 1971), aff'd 21 U.S.C.M.A. 401, 45 C.M.R. 175 (1972). The petty officer's order was not given for the purpose of increasing punishment. The appellant's offense was properly charged as a violation of Article 91 of the Code. The specification states an offense and the appellant's plea of guilty thereto was provident. . . .

The rationale of *Britt* and the analysis of *Rector* are applicable to the order of Petty Officer B to the accused in the instant case to put on his shirt, go to the messdecks, and help the other messmen. The accused was ordered to report to a designated location for a specific purpose, not merely exhorted to obey the law. *Bratcher* and *Wartsbaugh* are distinguishable. *United States v. Nixon, supra*, is also inapposite. In *Nixon* the court held that an accused could not be punished for a violation of Article 90, for disobeying an order, the only purpose of which was to effect his custody to transport him to a confinement facility. Such an order was the initial step in effecting the accused's apprehension and not a violation of an independent command. Unlike *Nixon*, the instant case does not involve an order imposing restraint. *Cf. United States v. Barnes, supra; United States v. Langley*, No. 79 1246 (N.C.M.R. 15 January 1980) (unpublished). We decline to extend *Wilson, supra*, beyond the situations covered by *Bratcher, Wartsbaugh*, and *Nixon*, the cases on which this court relied in *Wilson*. The court did not intend to make new law in *Wilson*, but merely to apply existing law. The ultimate offense here was the accused's willful disobedience of Petty Officer B's order, not a mere failure to report to his appointed place of duty. He was properly convicted of a violation of Article 91.

Turning to the orders of superior commissioned officers, which the accused stands convicted of disobeying, we find these orders indistinguishable from that held defective in *Bratcher*. The ultimate offense was the willful disobedience of Petty Officer B's order. The subsequent orders of LTJG H and LT Z merely reiterated the original order of B with which they sought to obtain the accused's compliance. They did not, however, escalate the punishment because the military judge, in effect, considered the offenses to be multiplicious for sentencing purposes. (R. 84). The Article 91 violation authorized the maximum sentence imposable by the special court-martial which tried the accused. Therefore, the accused's conviction of the Article 90 offenses had no impact on the sentence adjudged. *See United States v. Quarles*, 1 M.J. 231 (C.M.A. 1975); *United States v. Chronister*, 8 M.J. 533 (N.C.M.R.1979). Nevertheless we shall set aside the findings of guilty of these offenses, because it is unfair that the record reflect convictions of Article 90 offenses when the ultimate offense was a violation of Article 91.

The remaining assignments of error are without merit or mooted by our disposition.

Accordingly, the findings of guilty of Charge III and its specifications are set aside. Charge III is dismissed. The re-

maining findings of guilty and the sentence are affirmed.

Senior Judge DUNBAR and Judge GREGORY concur.