## UNITED STATES

v.

**Patrick E. McLAUGHLIN, 171 54 6624, Private (E–1), U.S. Marine Corps.**

**NMCM 82 1387.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 29 Sept. 1981.

Decided 29 Oct. 1982.

CAPT W.J. Ciaravino, USMC, Appellate Defense Counsel.

LT Michael P. Cogswell, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and MALONE, JJ.

BYRNE, Judge:

Private McLaughlin was convicted, contrary to his pleas, of two specifications of failure to obey lawful orders, two specifications of assault and two specifications of communicating a threat, violations of Articles 92, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 928, and 934. The military judge sentenced Private McLaughlin to confinement at hard labor for 25 days; to forfeit $300.00 per month for two months; and to be discharged from the U.S. Marine Corps with a bad-conduct discharge. The convening and supervisory authorities approved the sentence.

As the result of an incident in a Marine Corps enlisted men's club between Private McLaughlin and the assistant manager of the club, Private McLaughlin was summoned to a meeting the next day (June 25, 1981) with Sergeant McCord, the club manager. Sergeant McCord testified he identified himself to Private McLaughlin by rank and by duty assignment. He stated he inquired about the prior evening's incident, noted Private McLaughlin's conduct was inappropriate and then announced that Pri-

vate McLaughlin was going to be restricted from the enlisted men's club for 21 days. He then said he would "please" like to see Private McLaughlin's military identification card. Private McLaughlin initially refused to present the card on the basis that Sergeant McCord had no authority to see it. After five minutes of arguing about it, Private McLaughlin gave the card to Sergeant McCord, accompanying its delivery with a torrent of abusive language.[1] After copying down Private McLaughlin's name, rank and social security number from the card, Sergeant McCord returned the card and advised Private McLaughlin that he was prohibited from entering the enlisted men's club for a period of 21 days.

## I

There are two issues in the first assignment of error.

The first issue appellant assigns is:

THE FORM OF SERGEANT MCCORD'S REQUEST TO APPELLANT TO PRODUCE HIS IDENTIFICATION CARD WAS NOT SUCH A POSITIVE MANDATE AS TO CONSTITUTE AN ORDER.

■ We conclude that the communication from Sergeant McCord to Private McLaughlin, although containing the word "please," was an order and Private McLaughlin failed to obey that order.

■ An *order* is a communication, delivered orally, or in writing, or by signal, which *tells* the service person receiving the order what to do or what not to do. Orders also have been defined as positive mandates[2] and as positive demands.[3]

A communication, however, need not be expressed in a peremptory form to constitute an order.[4] It may be expressed in a courteous form.[5]

There must be significant flexibility in the form orders may take in order to reflect the various circumstances under which they are given. The services must be able to punish the violation of an order that was delivered in a friendly tone, or was stated diplomatically, or, as in this case, was preceded by a polite expression. Otherwise, only emphatic, insensitive orders would be punitively enforceable. Sometimes, issuance of such orders is contrary to the interest of high morale, good order, and discipline. For example, giving such orders to service personnel who are intoxicated has been discouraged, as a practical matter, for many decades.[6] The same observation would apply when recipients of orders are under great emotional stress.[7] In a similar vein, Sergeant McCord's primary military duty was managing an enlisted men's club. Service personnel attend such clubs to relax and enjoy themselves. Under such circumstances, the expression of orders in courteous forms enhances morale and tones down the confrontational situations that can result in disorders when service personnel are drinking.

Further, any serviceman or woman can give orders in a courteous manner, but still leave *no doubt* that s/he expects to be

1. Private McLaughlin's testimony substantially varied with Sergeant McCord's version of this incident. We accept Sergeant McCord's testimony as an accurate rendition of what transpired on June 25, 1981.

2. *United States v. Mitchell*, 6 U.S.C.M.A. 599, 20 C.M.R. 295 (1955); J. Snedeker, *Military Justice Under the Uniform Code*, 607 (1953) (*Snedeker*); *Winthrop's Military Law and Precedents* 574 (2nd Ed. 1920) (*Winthrop*).

3. *United States v. Glaze*, 3 U.S.C.M.A. 168, 11 C.M.R. 168 (1953).

4. *United States v. Mitchell, supra; United States v. Gallagher*, 15 C.M.R. 911 (A.B.R. 1954).

5. *United States v. Glaze, supra;* paragraph 169 b, *Manual for Courts-Martial, 1969 (Rev.);* Snedeker, *supra* at 574.

6. *Winthrop, supra* at 573, fn. 10; *United States v. Stevenson*, 21 U.S.C.M.A. 426, 45 C.M.R. 200 (1972); *United States v. Bruce*, 26 C.M.R. 809 (C.G.B.R.1958).

7. *United States v. Cave*, 17 U.S.C.M.A. 153, 37 C.M.R. 417 (1967).

obeyed.[8] In fact, we judicially note that utilizing the word "please" as part of the substance of an order is frequently used in the naval service.

Generally, the nature of the communication and the circumstances surrounding it are all that is necessary to determine if it is an order.[9]

The facts in this case exemplify a typical situation. Sergeant McCord had identified himself to Private McLaughlin as a non-commissioned officer and related his official duties, *i.e.,* club manager. He was speaking to the private in the manager's office in the enlisted men's club. He was discussing Private McLaughlin's inappropriate activities on a prior occasion and effectively communicated the fact that he was in the performance of his official duties in seeking McLaughlin's identity in order to administratively restrict him from the club for a period of time.

These types of clear-cut, everyday communications, under such circumstances as transpired in this case, do *not* lack specificity of meaning,[10] are *not* mere statements of wishes or views [11] and are *not* merely advice.[12]

Consequently, absent evidence to the contrary, there is no necessity initially to show the parties understood the communication to be an order in order to prove Private McLaughlin's guilt so long as the facts and circumstances unequivocally establish that an order was given.

This first issue is without merit.

## II

The second issue appellant assigns is:

COMPLIANCE WAS MADE BY PRIVATE MCLAUGHLIN TO SERGEANT MCCORD'S ORDER TO PRODUCE THE IDENTIFICATION CARD WITHIN A REASONABLE TIME AFTER THE ORDER WAS ISSUED.

■ We conclude that the order was disobeyed when *immediate* preparatory steps were not taken by Private McLaughlin to comply with Sergeant McCord's order to produce his identification card.

### 1. *Discipline In a Military Environment*

The ultimate goal of any legal system must be to support the objective of the society it serves. Military justice, consequently, must promote high morale, good order and discipline in the military.

Discipline is a state of mind in the individual service member so that s/he will instantly obey a lawful order, no matter how unpleasant or dangerous the task may be.[13] The role of military law in relation to discipline is to provide a framework for the encouragement of such discipline.[14]

A military organization that is undisciplined is unpredictable, lax, low in readiness and, generally, has poor morale. Consequently, rapid deployments, operational commitments, and achievement of combat objectives all are adversely affected. Further, when such weaknesses in our military services are perceived by unfriendly nations, they are encouraged to test our nation's defenses.

Utilization of practical, positive, leadership principles is, and always has been, the key to retention of good order and discipline in our military organizations. In the past, when such practical leadership princi-

8. *Guidebook for Marines,* 45 (14th Rev. ed. 1979). "Where a command or order is actually given, however, it loses none of its effectiveness by virtue of its expression in a courteous rather than in a peremptory form." *See also Snedeker, supra.*

9. *United States v. Mitchell, supra.*

10. *United States v. Glaze, supra; United States v. Faircloth,* 22 C.M.R. 585 (A.B.R.1956); *Winthrop, supra.*

11. *United States v. Bruce, supra.*

12. *United States v. Mitchell, supra.*

13. *See generally,* Bonds, *Punishment, Discipline, and the Naval Profession,* 104/12 U.S. Naval Institute Proceedings 47 (1978).

14. *See generally,* Allin, *Abel Parker Upshur and the Dignity of Discipline,* 22 Naval War College Review 85–91 (1970).

ples were not used, the ethical and moral standards developed by tradition and background were powerful enough to temporarily offset the failure to use these principles. However, because civilian society now has moved towards a legalistic standard *vice* ethical and *moral* standards as touchstones in governing day-to-day conduct,[15] and because this standard has filtered into the armed forces, our legal system *must* fill the resultant void.

The lessons of history teach what will transpire if this void is not filled:

> . . . in the military the record is replete with demonstrations of the obvious fact that the disciplined fighting force, be it an army or an individual, almost invariably carries the day against the undisciplined, even though the latter might be superior in numbers, machinery, or terrain.[16]

Long ago, in 1841, a Secretary of the Navy recognized the *positive* effects of a high state of discipline with these words:

> It [discipline] is . . . the wholesome action of wholesome laws, giving order to all efforts and security to all rights. The military man should feel there is a positive *dignity* in his submission to authority, and should place his chief pride in his *ready obedience* to command.[17]

(Emphasis supplied.)

Discipline *must* permeate a military organization from top to bottom. And, it *must* be present in response to routine situations such as when Private McLaughlin was ordered to give his identification card to Sergeant McCord, for "obedience to command is *the* principal tenet of a military institution . . . ." [18] (Emphasis supplied.)

The Secretary of the Navy, in two short sentences in *U.S. Navy Regulations* has described, in unequivocal terms, what a disciplined response to an order entails:

> All persons in the naval service shall show in themselves a good example of *subordination,* courage, *zeal,* sobriety, neatness and *attention to duty.*[19]

> All persons in the naval service are required to obey *readily* and *strictly,* and to execute *promptly,* the lawful orders of their superiors.[20]

(Emphasis supplied.)

*Winthrop* describes how orders should be obeyed with these words:

> . . . without hesitation, with alacrity . . .[21]

> . . . promptly . . .[22]

> . . . at once comply . . .[23]

> . . . unhesitating obedience . . .[24]

> . . . immediate compliance . . .[25]

In summary, a vital "proving ground" in determining whether our armed forces are disciplined enough to successfully defend our country is the length of time between the issuance of routine orders and their execution.

### 2. Preliminary Steps

Many orders are not capable of being executed immediately but anticipate that certain preliminary steps be taken. The obtaining of certain equipment to accomplish the task assigned is an example of a preliminary step.

In this case, when Sergeant McCord issued his order to Private McLaughlin to

---

**15.** *See Rieff, Are There Moral Choices in Today's Society?,* The Evening Bulletin (Providence, R.I.) March, 1977; Geyer, *Youth Doing its Own Thing plus Enjoying All The Comforts,* The Evening Bulletin (Providence, R.I.), December 8, 1976 at A–19; *Too Much Law?,* Newsweek, January 10, 1977 at 42–47.

**16.** Bekkedahl, *Discipline and the Profession of Naval Arms,* U.S. Naval Institute Proceedings, 188 (Naval Review 1977) (*Bekkedahl*).

**17.** *Id.* at 90.

**18.** *Bekkedahl, supra* at 189.

**19.** Navy Regs. (1973), Art. 1103.

**20.** Navy Regs. (1973), Art. 1104.

**21.** *Winthrop, supra* at 572.

**22.** *Id.* fn. 4.

**23.** *Id.*

**24.** *Id.*

**25.** *Id.*

hand over his identification card, there were a number of routine preliminary steps to be taken by Private McLaughlin. Those steps encompassed Private McLaughlin reaching into his pocket, taking out his billfold, removing his identification card, and giving it to Sergeant McCord.

■ A declaration by the recipient of a lawful order that s/he will not obey an order that requires that preparatory steps be begun immediately constitutes a failure to comply with the order.[26] Likewise, arguing about the obligation to comply with what is clearly a lawful order demanding immediate compliance constitutes a failure to obey that order.[27]

Consequently, when Private McLaughlin chose to argue about obeying the order, upon the obviously lame ground that Sergeant McCord had no authority to issue it, instead of taking steps to comply with the order, he disobeyed the order.

■ We further hold that, in the absence of specification of the means of execution of any preliminary steps, the *most expeditious* means of accomplishing these preliminary steps must be taken *unless* the order clearly or inferentially permits the exercise of discretion. *If* the order permits discretion, only *reasonable* preliminary steps would be legally permissible.[28]

3. *Reasonable Time for Compliance Standard Inapplicable When order Intends Immediate Execution*

The summary assignment of error asserts that Private McLaughlin, while he delayed, complied with Sergeant McCord's order to hand over his identification card within a reasonable time.

■ However, when an order requires compliance at once, a "reasonable" time standard within which to comply with the order is inapplicable.[29] The reason is that use of the term "reasonable" implies that a lengthier period, other than immediately, may be an acceptable response time on the part of the recipient of the order.

"Delayed compliance" as a defense is nothing more than an assertion that the order, within its terms, was obeyed.[30] It sprang from a rather noncontroversial statement in paragraph 169*b* of the *Manual for Courts-Martial (1951)*,[31] which is repeated in the present Manual as follows:

> If the order to a person is to be executed in the future, a statement by him to the effect that he intends to disobey it is not an offense under Article 90, although carrying out that intention may be.[32]

Consequently, the real test in these cases is: were the express and implied terms of the order complied with by the recipient of the order? Of course, this test must be evaluated within the context of the mandatory requirement for a disciplined naval service and the recipient's responsibilities within that service which we have previously discussed.

Private McLaughlin was not ordered to do something at some time in the future. He was ordered to do it immediately.

To hold that Private McLaughlin might delay the execution of this lawful order would be to invite the sort of lack of discipline and its consequences we have previously discussed.

---

26. *United States v. Williams,* 19 U.S.C.M.A. 78, 39 C.M.R. 78 (1969); *United States v. Thompson,* 47 C.M.R. 565 (N.C.M.R.1973).

27. *Id.*

28. *Cf. United States v. Clowser,* 16 C.M.R. 543, 550 (A.F.B.R.1954).

29. *United States v. Woodley,* 20 U.S.C.M.A. 357, 359, 43 C.M.R. 197, 199 (1971); *United States v. Clowser, supra* at 549.

30. *United States v. Clowser, supra* at 548–49; *United States v. Ashley,* 8 C.M.R. 810 (A.F.B.R. 1953).

31. *See United States v. Stout,* 1 U.S.C.M.A. 639, 5 C.M.R. 67 (1953).

32. Paragraph 169*b, Manual for Courts-Martial, 1969 (Rev.).*

■ Consequently, we hold that immediate, unhesitating compliance with lawful orders, such as Sergeant McCord's, is required *unless* the order clearly or inferentially indicates a longer time for compliance. Such a longer compliance time would be the specified time, *or* if no time is specified for execution of the order, a reasonable time.

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge GLADIS and Judge MALONE concur.

