UNITED STATES, Appellee,

v.

Specialist Alisa SCHWABAUER, 065–66–3168, United States Army, Appellant.

ACMR 9100602.

U.S. Army Court of Military Review.

6 Feb. 1992.

710

For Appellant: Captain Teresa L. Norris, JAGC (argued), Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Appellee: Captain Gregory T. Baldwin, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before NAUGHTON, HOWELL and JOHNSTON, Appellate Military Judges.

OPINION OF THE COURT

NAUGHTON, Senior Judge:

A military judge sitting as a special court-martial at Log Base Echo, Saudi Arabia and Iraq, convicted the appellant, consistent with her pleas, of willfully disobeying the lawful order of a noncommissioned officer and wrongful disposition of military property, in violation of Articles 91 and 108, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 891 and 908 (1982), respectively.[1] The appellant was sentenced to a bad-conduct discharge, confinement for three months, forfeiture of $400.00 pay per month for three months, and reduction to Private E1. The convening authority approved the sentence but remitted the unexecuted portion of the sen-

---

1. The appellant pleaded not guilty and was found not guilty of disrespect toward a noncommissioned officer in violation of Article 91, UCMJ. The appellant also pleaded not guilty to misbehavior before the enemy, in violation of Article 99, UCMJ, 10 U.S.C. § 899, but guilty by exceptions and substitutions to wrongful disposition of military property in violation of Article 108, UCMJ.

tence adjudging confinement effective 1 May 1991.

The appellant contends that the military judge erred in accepting her plea of guilty to willful disobedience of a lawful order since the appellant complied with the order within a reasonable time. The appellant also contends that the military judge erred in accepting the appellant's plea of guilty to wrongful disposition of military property where the property never left government control. Further, the appellant contends that her bad-conduct discharge should be set aside because she was illegally confined for twenty-nine days after her sentence to confinement was remitted. We disagree with the appellant's first two contentions, but do agree as to the latter contention that the appellant is entitled to sentence relief.

In January 1991, the appellant and her husband, Specialist Steven P. Schwabauer deployed with their unit from Germany to Saudi Arabia for Operation Desert Shield/ Storm. On 4 February 1991, Command Sergeant Major (CSM) Cook was approached by the appellant and her husband and asked whether he was available for a private conversation. After a short delay, the conversation began and the appellant and her husband told of the appellant's fears of being forward deployed as a member of a contact team engaged in repairing intelligence equipment and of going into combat. According to the stipulation of fact, they both stated words to the effect that "we are sick of this, we can't take any more, we want to quit the Army." CSM Cook attempted to resolve the situation, but the appellant became emotional and upset. The appellant and her husband then placed their M16A2 rifles on a folded tent, dropped their bayonets on the ground, turned, and began walking away. CSM Cook ordered the appellant and her husband to "stop and come back here" but they continued to walk away. The appellant and her husband continued to walk for another several feet and CSM Cook again told them to "stop." They stopped walking

after the second order, but did not return to CSM Cook.

According to the providence inquiry and the stipulation of fact, the appellant admitted that she understood the first order to stop and return, that it was a lawful order requiring immediate compliance, that she had a duty to obey the order, and that she willfully disobeyed it. The appellant also acknowledged that she had previously been given an order to keep her weapon in her physical possession and control at all times while in the 3d Armored Division Tactical Assembly Area.

■ Citing *United States v. Dellarosa*, 27 M.J. 860 (A.F.C.M.R.1989), *affirmed*, 30 M.J. 255 (C.M.A.1990), the appellant contends that the short delay in compliance between CSM Cook's first order and second order to stop does not constitute disobedience and that the appellant was entitled to a reasonable time to comply with the order to stop. In *United States v. Wilson*, 17 M.J. 1032, 1033 (A.C.M.R.1984), *petition for review granted*, 19 M.J. 40 (C.M.A. 1984), *order vacated and petition for review denied*, 19 M.J. 79 (C.M.A.1984), this Court adopted the analysis of *United States v. McLaughlin*, 14 M.J. 908, 913 (N.M.C.M.R.1982), *petition denied*, 15 M.J. 405 (C.M.A.1983), and stated "[T]hat immediate compliance is required by any order which does not explicitly or implicitly indicate that delayed compliance is authorized or directed." A direct order to "stop and come back here" is clear and unambiguous. It requires immediate obedience.[2] Under the circumstances of this case, there is nothing in CSM Cook's order that permitted or implied a reasonable time to obey or authorized delayed compliance. *See* Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984], Part IV, para. 14c(2)(g).

■ Citing *United States v. Holland*, 25 M.J. 127 (C.M.A.1987), the appellant contends that her plea of guilty to the charge of wrongful disposition of military property

---

**2.** Under the circumstances of this case, i.e., a tactical assembly area prior to hostilities, the considerations mentioned in *United States v.* *Cave*, 37 C.M.R. 417 (C.M.A.1967), are inapplicable.

was not provident because the property never left government control and that the term "disposition" requires "some form of alienation of the property from the Government by the accused." *Id.* at 128. During the plea inquiry, the appellant told the military judge that she was not attempting to turn in the weapon or to give it to CSM Cook. She went on to explain that she intended to abandon her rifle and bayonet and that she did not care what happened to them after she walked away. The stipulation of fact specifies that the abandonment of the rifle and the bayonet was wrongful, willful, and an unauthorized surrender of the use and control of such property.

There is also no dispute that when the appellant walked away from her rifle and bayonet, CSM Cook and her First Sergeant were standing in close proximity to the military property. The appellant argues that under the holding of *Holland*, if the property does not leave government control, she can not be guilty of wrongful disposition of military property, regardless of her intent.

The government argues that the appellant relinquished control and abandoned any possessory interest she had in the military property. The government further asserts that the appellant's reliance on *Holland* is misplaced as that case focused on the control exercised by the accused over the property and not on whether the property was under government control. In *Holland*, the accused did not "relinquish control" or "otherwise abandon" the military property and "retained at least a possessory interest or some control" over it. *Id.* at 128.

■ The deliberate violation or intentional disregard of some specific order regarding the military property is included within the parameters of willfully or negligently suffering the wrongful disposition of military property specified in Article 108, UCMJ. MCM, 1984, Part IV, para. 32c(2). In a tactical assembly area where arms room storage racks and other amenities of garrison life may not be available, wrongful disposition of military weapons and property includes the willful abandonment of weapons in violation of orders, even though other military personnel are near who should assume control of the property.

■ Here the effect of the appellant's action was that she abandoned the property and lost any possessory interest she had in her rifle and bayonet. She was not authorized to abandon the weapon. Consequently, the appellant's "unauthorized surrender of control over military property of the United States ..." constitutes a violation of Article 108. *See United States v. Faylor*, 24 C.M.R. 18 (C.M.A.1957); *United States v. Banks*, 15 M.J. 723, 724 (A.C.M.R. 1983), *affirmed*, 20 M.J. 166 (C.M.A.1985). The fact that two senior noncommissioned officers were present when the appellant wrongfully disposed of her rifle and bayonet may be a matter to be considered in extenuation and mitigation, but does not rise to the level of a lawful justification or defense to that offense.[3]

■ Finally the appellant contends, and the government concedes, that she was illegally held in post-trial confinement for twenty-nine days after the convening authority ordered that the portion of her confinement which was unexecuted be remitted. After her sentence to confinement, the appellant was confined in Germany in the Mannheim Confinement Facility. She was subsequently transferred to Fort Dix, New Jersey, and confined in the Navy Brig in Philadelphia, Pennsylvania, before being sent to Fort Knox, Kentucky, for outprocessing. The message publishing the convening authority's action, message traffic between Germany and Fort Dix, and messages and telephone coordination within the United States were utilized to effect her release. We agree that the appellant was illegally confined and find that the appropriate remedy for this error is to reassess the adjudged sentence.[4]

---

**3.** Even if the analysis in *Holland* was intended to apply to this situation, we find that the appel-

lant attempted to abandon the military property in violation of Article 80, UCMJ.

**4.** The government argues that the appropriate

**713**

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge and reduction to the grade of Private E1.

Judge HOWELL and Judge JOHNSTON concur.

remedy for this error is to reassess the forfeiture portion of the adjudged sentence, *see United States v. Powell,* 25 M.J. 814 (A.F.C.M.R. 1988); *United States v. Dugger,* 1 M.J. 1069

The appellant lied to military criminal investigators as they were questioning him on post about criminal charges against him. During the plea inquiry, he admitted that he lied to them while under oath and that his conduct was discrediting to the military in violation of Article 134, UCMJ. He now contends that his plea of guilty of the offense of false swearing is improvident because the military judge failed to elicit a sufficient factual basis for the plea. Specifically, the appellant alleges that the trial judge failed to ascertain on the record how his conduct, occurring as it did on a military installation, violated the service-discrediting clause of Article 134, UCMJ. *See United States v. Caballero,* 49 C.M.R. 594 (N.C.M.R.1976), while the appellant asserts the appropriate remedy is to disapprove the bad-conduct discharge, *see United States v. Hilt,* 18 M.J. 604 (A.F.C.M.R.1984).